## LLOYD, RESPONDENT, *v.* SILVER BOW COUNTY, APPELLANT

[Argued December 15, 1891.   Decided December 28, 1891.]

CONSTITUTIONAL LAW — *Officers.* — It is within the legislative power of a State, unless restrained by some provision of the Constitution itself, to create, modify, or abolish an office, or to increase or diminish the compensation of the officer. (*People* v. *Van Gaskin,* 5 Mont. 352 ; *Territory* v. *Carson,* 7 Mont. 417, cited.)

SAME — *Same — Salary and compensation.* — Where the Constitution itself does not fix the compensation of a public officer first elected thereunder, an act of the State legislature decreasing the emoluments of his office during his term, by amending the territorial statute in which they are prescribed, is not in contravention of section 31, article v. of the Constitution, providing in substance that the compensation of a public officer shall not be diminished after his election ; *"provided,* that this shall not be construed to forbid the legislative assembly from fixing the salaries or emoluments of those officers first elected under this Constitution, where such salaries or emoluments are not fixed by this Constitution ; " and it cannot be said that the compensation of such an officer is fixed by the Constitution, within the meaning of such proviso, by force of section 1, article xx. of the Constitution, adopting the laws of the Territory as the laws of the State, as such adoption is made only until such laws may be altered or repealed.

*Appeal from Second Judicial District, Silver Bow County.*

Action to determine the constitutionality of a certain statute. The cause was tried before McHatton, J., upon an agreed case. Plaintiff had judgment below.

*Frank E. Corbett,* for Appellant.

*McConnell & Clayberg,* and *Forbis & Forbis,* for Respondent.

Blake, C. J. — This is an appeal from the judgment of the court below, which was entered in the following agreed case: "Whereas, there is a question of difference between the above-named parties which might be made the subject of a civil action; and whereas, the said parties have agreed upon the facts constituting such controversy, and desire to present a submission of the same to the above-entitled court. Now, therefore, in consideration of the premises, and in order to have the said controversy settled by a competent court, the parties hereby submit such controversy to the above-entitled court, and hereby agree upon the following state of facts, to wit: —

"*First.* That John E. Lloyd is the sheriff of Silver Bow County, Montana, and was elected sheriff of the said county upon the admission of Montana into the Union as a State, and is the first sheriff of Silver Bow County elected under the Constitution, and is still holding the said office under and by virtue of such election, and his term of office has not yet expired.

"*Second.* That on the twenty-sixth day of February, 1891, and during the said term of office of the said John E. Lloyd, the legislature of the State of Montana enacted a statute entitled 'An act fixing the compensation for the board of prisoners confined in county jails,' which act reduced the compensation of the sheriffs of the several counties of Montana, for the board of prisoners confined in jails under their charge, from *not more than one dollar per day* to *not to exceed sixty cents per day,* thereby reducing the compensation of the said sheriff.

"*Third.* That on the sixth day of March, 1891, and during the term of office of the said John E. Lloyd, the legislature of the State of Montana passed an act entitled 'An act to amend section 944 of the fifth division of the Compiled Statutes of

Montana,' and which act reduced the compensation or mileage of the sheriffs and other officers in the several counties of the State of Montana from the sum of fifteen cents per mile to the sum of ten cents per mile.

"*Fourth.* That the board of commissioners of the county of Silver Bow have, since the passage of the said acts, in all claims of the said John E. Lloyd against the county of Silver Bow for board of prisoners and for mileage, made allowances therefor under the provisions of the said several acts.

"*Fifth.* That the said John E. Lloyd has presented his claims and made his demands under the laws which were in force, regulating the board of prisoners and the mileage of officers, at the time that he was elected sheriff of Silver Bow County, which the board of commissioners of Silver Bow County have refused to allow, but have allowed him compensation as provided in the said acts hereinbefore recited.

"Now, the questions in controversy, and of difference between the parties to this suit, are as follows: The said John E. Lloyd claims that the several acts of the legislature hereinbefore recited are unconstitutional, and that the legislature had no authority to pass the same, thereby reducing his compensation during his term of office, and that the said several acts are in contravention of article 5, section 31, Constitution of the State of Montana, and of the Constitutional Schedule. On the other hand, the board of county commissioners of the county of Silver Bow claim that the legislature was authorized to pass said acts, and that the said John E. Lloyd is entitled to only such compensation, for board of prisoners and mileage, as by the said acts is provided. If the said acts are unconstitutional as to the said John E. Lloyd, and as he contends they are, then it is agreed that he shall receive such compensation for the board of prisoners and for mileage as was allowed by law at the time of his election. If, however, the said acts are constitutional, as is contended by the said board of commissioners of the county of Silver Bow, then the said John E. Lloyd shall receive such compensation as the said acts provide for such services. The amount in difference between the said parties is in excess of one hundred dollars, but the exact amount is not known at this time, but is a matter easily ascertained, upon an accounting

between the parties, and the parties hereto only ask the court for an opinion or decision of the said matters in controversy, and upon a rendition thereof agree to settle their differences between themselves."

The court, in the judgment, among other things, said "that the several laws recited in the said agreed case, whereby the compensation of the plaintiff, as sheriff of the county of Silver Bow, had been reduced below the fees or compensation which were allowed at the time of the election of the said plaintiff as sheriff of the said county of Silver Bow, State of Montana, were not applicable to the said sheriff as aforesaid, and that, so far as the laws there recited attempted to reduce the salaries, fees, or emoluments of the plaintiff, as sheriff, the same were in violation of the Constitution of the State of Montana, and that the said laws, as to the said sheriff during his present term of office, are inoperative."

This case involves the interpretation of the following section of the Constitution: "Except as otherwise provided in this Constitution, no law shall extend the term of any public officer, or increase or diminish his salary or emoluments, after his election or appointment; *provided*, that this shall not be construed to forbid the legislative assembly from fixing the salaries or emoluments of those officers first elected or appointed under this Constitution, where such salaries or emoluments are not fixed by this Constitution." (Art. v. § 31.) The general effect of this language can be comprehended when the doctrines of the courts respecting legislative power are set forth. The consideration of *Butler* v. *Pennsylvania*, 10 How. 402, and *Newton* v. *Commissioners*, 100 U. S. 548, and the cases therein cited, throws light upon this proposition. In *Butler* v. *Pennsylvania, supra,* Mr. Justice Daniel, for the court, said: "The Constitution of Pennsylvania contains no limit upon the discretion of the legislature, either in the augmentation or diminution of salaries, with the exceptions of those of the governor, the judges of the Supreme Court, and the presidents of the several courts of common pleas. The salaries of these officers cannot, under that Constitution, be diminished during their continuance in office. Those of all other officers in the State are dependent upon legislative discretion. We have already

shown that the appointment to and the tenure of an office created for the public use, and the regulation of the salary affixed to such an office, do not fall within the meaning of the section of the Constitution relied on by the plaintiffs in error; do not come within the import of the term 'contracts,' or, in other words, the vested private personal rights thereby intended to be protected." The court, by Mr. Justice Swayne, in *Newton* v. *Commissioners, supra,* said: "The legislative power of a State, except so far as restrained by its own Constitution, is at all times absolute with respect to all offices within its reach. It may at pleasure create or abolish them, or modify their duties. It may also shorten or lengthen the term of service. And it may increase or diminish the salary or change the mode of compensation." These principles have been applied by the Supreme Court of the Territory of Montana in *People* v. *Van Gaskin,* 5 Mont. 352; *Territory* v. *Carson,* 7 Mont. 417. Mr. Justice Galbraith, for the court, in *Territory* v. *Carson, supra,* said: "It is the general rule of law that it is competent for the legislature to increase or decrease the duties incumbent upon public officers, and to increase and diminish their compensation, in so far as it is not prohibited by the fundamental law."

In order that the authority of the legislature might be curtailed in this regard, provisions similar to those under review have been adopted in the fundamental charters of many States. The intention of the framers of our Constitution is exhibited clearly in a number of the clauses, which should be noticed: "No member of either house shall, during the term for which he shall have been elected, receive any increase of salary or mileage under any law passed during such term." (Art. v. § 8.) "The legislative assembly shall not pass local or special laws in any of the following enumerated cases, that is to say, . . . . creating, increasing, or decreasing fees, percentages, or allowances of public officers." (Art. v. § 26.) "No bill shall be passed giving any extra compensation to any public officer, servant or employee, agent or contractor, after services shall have been rendered or contract made, nor providing for the payment of any claim made against the State, without previous authority of law, except as may be otherwise provided herein." (Art. v. § 29.) "The compensation enumerated" of the governor, sec-

retary of State, attorney-general, State treasurer, State auditor, and superintendent of public instruction, "shall be in full for all services by said officers, respectively, rendered in any official capacity or employment whatever during their respective terms of office, and the salary of no official shall be increased during his term of office." (Art. vii. § 4.) "The justices of the Supreme Court and the judges of the District Courts shall each be paid quarterly by the State a salary which shall not be increased or diminished during the terms for which they shall have been respectively elected." (Art. viii. § 29.) "No justice of the Supreme Court nor judge of the District Court shall accept or receive any compensation, fee, allowance, mileage, perquisite, or emolument, for or on account of his office, in any form whatever except the salary provided by law." (Art. viii. § 30.) Every one of these sections embodies an express restriction upon the powers of the legislative assembly.

Counsel agree concerning the construction of the general language in the section before us, but differ as to the effect of the proviso. The contention of the respondent practically ignores this clause, or renders it meaningless. Chief Justice Sanderson, in *French* v. *Teschemaker*, 24 Cal. 539, lays down this canon of interpretation: "Constitutions, like statutes and private instruments, must be so construed, if possible, as to give some force and effect to each of their provisions. The legal intendment is that each and every clause has been inserted for some useful purpose, and, when rightly understood, may have some practical operation." "The office of a proviso, generally," says Mr. Justice Story, in *Minis* v. *United States*, 15 Peters, 445, "is either to except something from the enacting clause, or to qualify or restrain its generality, or to exclude some possible ground of misinterpretation of it, as extending to cases not intended by the legislature to be brought within its purview."

The office of sheriff and its term of two years has been established by the Constitution. (Art. xvi. § 5.) The Constitution also provides for the election of this officer in each county, on the first Tuesday in October, 1889, and that the term "shall begin upon the admission of the State and end upon the first Monday of January, A. D. 1893." (Ordinance 2, p. 9.) It is admitted that the respondent was an officer, who was first elected under

our Constitution, and we hold that this proviso conferred upon the legislative assembly the power to fix his salary and emoluments if the same had not been "fixed by this Constitution." It is evident that the expression does not relate to the governor, secretary of State, judges of the District or Supreme Courts, or any other officers whose salaries are specified in the instrument. The salary and emoluments of the sheriff are not "fixed" in any article of the Constitution. It is maintained that this result has been produced by the following section: "All laws enacted by the legislative assembly of the Territory of Montana, and in force at the time the State shall be admitted into the Union, and not inconsistent with this Constitution or the Constitution or laws of the United States of America, shall be and remain in full force as the laws of the State until altered or repealed, or until they expire by their own limitation." (Art. xx. § 1.)

We have often commented on this vital sentence, and it is so plain that there is no room for construction. When the respondent entered upon his official duties, his fees and emoluments were prescribed by the statutes which had been enacted by the legislative assembly of the Territory prior to its admission into the Union, and were then in force. These laws, which are mentioned in the agreed statement of facts, can be amended or repealed, unless such action is prohibited by the Constitution. The proviso under consideration is not an inhibition, but a reservation of the right of the legislative assembly to alter the statutes and fix the salary or emoluments of the sheriff, or any other officers of the same class, who were elected when the Constitution was adopted.

If this is not a sound interpretation of the proviso, to whom is it applicable? It is insisted by the respondent that the lieutenant-governor, State examiner, clerk of the Supreme Court, clerk of the District Court, county attorney, and commissioner of labor are affected by its terms. No certain amounts for their compensation are named in the Constitution, and it was needless to make this grant of power to the legislative assembly in this proviso when ample authority had been already clearly expressed in other sections. "The lieutenant-governor shall receive the same per diem as may be prescribed by law for the

speaker of the legislative assembly." (Art. vii. § 4.) "His compensation [the State examiner] shall be fixed by law." (Art. vii. § 8.) "His compensation [clerk of the Supreme Court] shall be fixed by law." (Art. viii. § 9.) "His compensation [clerk of the District Court] shall be as provided by law." (Art. viii. § 18.) The county attorney "shall have a salary to be fixed by law." (Art. viii. § 19.) "His compensation [commissioner of labor] shall be as provided by law." (Art. xviii. § 1.) There was, then, no necessity for the incorporation of these provisions in the section *supra*, if their application is to be restricted to the officers for whom provision is made in the Constitution.

The respondent relies upon the case of *Gross* v. *Kenfield*, 57 Cal. 626. It appears that Gross was elected clerk of the Supreme Court under the clause providing: "The first officers chosen after the adoption of the Constitution shall be elected at the time and in the manner now provided by law." The court said: "Before and at the time of the adoption of the Constitution there was a law in force which provided for the election of a clerk of the Supreme Court, prescribed his duties, and fixed his compensation; and that law, not being inconsistent with the Constitution, should be treated, we think, as it would be if the present Constitution had been in force at the date of its passage. (§ 1, art. xxii.) The same reason exists against increasing or diminishing the compensation of the present incumbent during his term of office as will exist against increasing or diminishing the compensation of his successor during his term of office; and it seems to us that the constitutional prohibition applies as well to the one elected at the first as it will to those elected at subsequent elections, under the present Constitution."

These clauses of the Constitution of California relate to the subject: "The legislature shall provide for the election of a clerk of the Supreme Court, and shall fix by law his duties and compensation, which compensation shall not be increased or diminished during the term for which he shall have been elected." (Art. vi. § 14.) "That all laws in force at the adoption of this Constitution not inconsistent therewith shall remain in full force and effect until altered or repealed by the

legislature." (Art. xxii. § 1.) This instrument does not have any proviso similar to that under examination, and, while the holding of the court is undoubtedly correct, we are not enlightened upon the question before us.

We are of the opinion that the intent of the framers of the Constitution is that the salary or emoluments of an officer like that of the sheriff, who was elected in October, 1889, shall. be subject to the control of the legislative assembly, and that the power to "fix" carried with it the implied right to increase or diminish the same by amending the statutes which may be in force. This construction gives full life to the proviso. It appears from the statement of facts that the legislation which is referred to consisted of amendments to the laws, which are recognized in the section of the Constitution, *supra*, and were thereby authorized to be made.

It is therefore ordered and adjudged that the judgment be reversed, and that the cause be remanded, with directions to the court below to enter a judgment upon the agreed statement of facts in favor of defendant.

*Reversed.*

Harwood, J., and De Witt, J., concur.