# DECISIONS

OF THE

# COURT OF APPEALS OF KENTUCKY.

## APRIL TERM, 1905.

Case 1.—PETITION BY THE AGRICULTURAL & MECHANI-
CAL COLLEGE FOR MANDAMUS TO COMPEL THE IS-
SUANCE OF A WARRANT BY THE AUDITOR OF PUBLIC
ACCOUNTS FOR AN APPROPRIATION MADE TO SAID
COLLEGE BY THE KENTUCKY LEGISLATURE.—June 17.

## Agricultural & Mechanical College v. Hager, Auditor.

121    1
f125  449

121    1
f131  162

Appeal from Franklin Circuit Court.

JOHN D. CARROLL, Special Judge.

From the judgment dismissing the petition the
plaintiff appeals. Reversed.

1. Schools—Appropriation—Constitutionality—Const., sec. 184, pro-
vides that the bonds of the Commonwealth issued in favor
of the Board of Education and a specified amount of the stock
of the Bank of Kentucky shall be held inviolate for the sus-
tenance of the common school system; that no sum shall
be raised for education other than in common schools until
the question of taxation is submitted to the voters, and the
majority of votes cast shall be in favor of such taxation, pro-
vided that "the tax now imposed for educational purposes
and for the endowment and maintenance of the Agricultural
and Mechanical College shall remain until changed by law,"

Agricultural & Mechanical College v. Hager, Auditor.

Acts 1904, p. 288, chap. 120, appropriated a sum of money for the benefit of the Agricultural and Mechanical College, no part of the appropriation being derived from the bonds and stock mentioned in the Constitution, and the question of the appropriation not having been submitted to the voters. Held—That as it appeared that at the time the constitutional provision was adopted the college was being maintained by the State through appropriations of public funds, such college was no part of the common school system, and that the constitutional convention intended the proviso to apply to the college, and, at nearly every session of the Legislature since the adoption of the Constitution appropriations had been made for the college, the act of 1904 was valid.

2. Aid to Interpretation—Debates in Constitutional Conventions— An aid to the interpretation of this section is a reference to the debates of the constitutional convention, which show that when this section was reported from the committee of education without the proviso it was objected to upon the grounds that it might be construed to prevent further appropriations to the very institutions which have been named, including appellant, when members of the convention, including the chairman, a distinguished citizen and lawyer, disclaimed such a purpose and defended the report by the assertion that it could not properly be so construed, and which, after debate, culminated in the adoption of the proviso.

3. Contemporaneous Construction—Another aid to its interpretation is its contemporaneous practical construction by all the other departments of the State government, including the Legislature, by which every one of these institutions has been sustained by annual appropriations at nearly every session since the adoption of the present Constitution, which have been approved by the chief executives of the State.

4. Doubtful Constitutionality—The final canon of construction is, where there may be doubt after all sources of aid have been resorted to, whether the act violates the Constitution, the doubt is resolved in favor of its constitutionality.

5. Levying Taxes—This appropriation is not upheld on the ground that it is not a levying of taxes. If an object can not have a tax levied for it if deemed necessary by the proper power, then no appropriation of public money can be made to it. Where the Constitution forbids the levying of a tax for a given purpose it must be held that it also withholds the power of making appropriations for that purpose unless there is something in the Constitution which particularly and unmistakably authorizes an appropriation, which is not the case here.

Agricultural & Mechanical College v. Hager, Auditor.

W. O. DAVIS and LEWIS McQUOWN for appellant.

ROBERT L. STOUT and ELI H. BROWN, JR., of counsel.

POINTS AND AUTHORITIES.

1. The nature of the legislative power. (Sec. 29, Con. Ky.; Cooley's Con. Lim., p. 126; Griswold v. Hepburn, 2 Duv., 20; Higgins v. Prater, 91 Ky., 6.)

2. Legislature has full power unless there is a direct prohibition or clear implication against its exercise. (Higgins v. Prater, 91 Ky., 6.)

3. The courts will not resort to an implication to destroy a statute, nor to supply things which were intentionally omitted. (Atl. W. Works Co. v. Con. Water Co., 44 N. J. Eq., 427; Black Interp. Laws, sec. 33.)

4. No implication against an appropriation of the general revenue can arise from a prohibition against levying a tax for a specific purpose.

5. The Legislature can devote the general revenue to any public purpose, and select such agent as it deems fit to execute its purposes. (Ky. Live Stock Asso. v. Hager, 27 Ky. Law Rep., 518.)

6. The proviso to sec. 184, Con. Ky., authorized the Legislature, without limitation, to change the aid for educational purposes by an appropriation, or an increase of the tax for the A. & M. College.

7. Where power, without limitation, is conferred on the Legislature, any means appropriate to the end may be employed. (Story Con., sec. 432.)

8. The proceedings of the convention which adopted the Constitution afford pertinent helps to its proper construction. (Higgins v. Prater, 91 Ky., 6; Cooley's Con. Lim., 66.)

9. Construction of sec. 184, Ky. Con., by the legislative and executive departments. (Auditor v. Aud, 97 Ky., 183; Auditor v. Cain, 22 Ky. Rep., 1888.)

10. After the purpose for which a tax has been collected has been accomplished, a surplus remaining may be used for general purposes without violating sec. 180, Ky. Con. (Field v. Stroube, 103 Ky., 116; Haley v. Commonwealth, 23 Ky. Law Rep., 1298; Burch v. Owensboro, 18 Ky. Law Rep., 284.)

N. B. HAYS, Attorney General, and CHAS. H. MORRIS for appellee.

Contemporaneous Construction—It has been held in a number of cases that the construction given to a statute for a long period of time is entitled to weight in considering it, but this rule has

only been applied in cases where the same construction has continued for a long term of years, and as said in Commonwealth v. Railroad Companies, 95 Ky., 60: "If the language of an act be certain, its object can never be frustrated by any amount of contemporaneous interpretation. * * * It is not allowable to interpret what has no need for interpretation."

We say in this case the language of this section is so plain that there can be no reason for aid or assistance in giving it the correct interpretation.

Aside from this, however, this act of the Legislature has only been in force thirteen years, therefore legislative or departmental construction of it has not been continued long enough to entitle it to weight, and in the time it has been in force only two appropriations have been made to this college prior to this one.

In conclusion our contention is, that no aid can ever be given this institute by the State, in addition to what is now given to it, unless the tax for its benefit is directly increased by the Legislature; whether if so increased, the question must be first submitted to the voters and approved by them before the tax becomes effective, we need not now further discuss.

### AUTHORITIES CITED.

Higgins v. Prater, 91 Ky., 6; Constitution, sec. 184; Con. Debates, 4452, 4454, 4592, 4457, 4456, 4459, 4488, 4497, 4528; Commonwealth v. Railroad Companies, 95 Ky., 60.

OPINION BY JUDGE O'REAR—Reversing.

Appellant is an educational institution, created, maintained and operated by the State of Kentucky. It is incorporated, but is officered by trustees appointed by the Governor by and with the advice and consent of the Senate, the Governor being ex officio member and chairman of the board. While a part of its sustenance is drawn from general appropriations made by the United States government, and in part from tuition fees received from certain of its pupils, yet it is in every essential feature a State college. Its main support is derived from the tax of one-half cent on the $100 levied in its behalf by the State of Kentucky. An act of the General Assembly

which became a law March 26, 1904 (Acts 1904, p. 288, chap. 120), made an annual appropriation of $15,000 for the benefit of appellant, payable to its treasurer by the State Treasurer upon warrant issued by the Auditor of Public Accounts. The Auditor, having doubts of the constitutionality of the appropriation, declined to issue a warrant for the sum appropriated for this year. The petition of the appellant for a mandamus to compel the issual of the warrant was dismissed by the Franklin Circuit Court.

It is claimed on behalf of appellee that the act of appropriation violates sec. 184 of the Constitution; that by that section no sum whatever can be appropriated for education by the State, other than for the common schools, unless it be first approved by a majority of the votes of the people at an election to determine the question.

Sec. 184 of the Constitution reads as follows: "The bond of the Commonwealth issued in favor of the Board of Education for the sum of one million three hundred and twenty-seven thousand dollars shall constitute one bond of the Commonwealth in favor of the Board of Education, and this bond and the seventy-three thousand five hundred dollars of the stock in the Bank of Kentucky, held by the Board of Education, and its proceeds, shall be held inviolate for the purpose of sustaining the system of common schools. The interest and dividends of said fund, together with any sum which may be produced by taxation or otherwise for purposes of common school education, shall be appropriated to the common schools, and to no other purpose. No sum shall be raised or collected for education other than in common schools until the question of taxation is submitted to the legal voters, and the majority of the votes cast at said election shall be in favor of such

taxation: *Provided,* The tax now imposed for educational purposes, and for the endowment and maintenance of the Agricultural and Mechanical College, shall remain until changed by law.''

The inherent power of the Legislature to appropriate public funds or to raise funds by taxation for governmental purposes, save as may have been withheld or limited by the Constitution, is not questioned. It is conceded that public education is a purpose for which taxes may be levied, and that, unless restricted by the Constitution, the exercise of the power in behalf of appellant would fall clearly within the rule. Whether there is such restriction in the section quoted is the question for decision. Its analysis discloses that it is severable into three parts, viz: One, wherein a capital fund is provided, whose income and all other sums raised for the common school system are exclusively set apart for the benefit of the common schools; second, the exclusion of all other methods of public education by taxation until the question has been approved by the voters of the State; and, third, a limitation of the last-named provision, excluding from its operation certain institutions.

The common school system of this State is defined by statute (chap. 113, p. 1524, Ky. Stats. 1903). It is a uniform series of district schools, each local in its district, but all of general or equal grade throughout the State, varying only according to the population of the districts, and whether the districts have or not adopted the graded or high school system in addition. They afford free tuition for certain parts of the year to all resident children within the statutory age. They are sustained, in the main, by the income provided by sec. 184 of the Constitution, by certain taxes levied directly for their benefit, and certain fines and forfeitures. They may be aided,

however, by local taxation in addition. Neither the
Agricultural and Mechanical College, nor any other
institution, is now or was then comprised within the
system. No part of the appropriation now in ques-
tion was derived from the bonds, stock, and income
mentioned in sec. 184 of the Constitution, and in-
violably set apart for the common schools. Nor was
the question of this appropriation submitted to or
passed upon by the voters of the State. If it is
upheld, it is because it has been made under a power
vested in, or, rather, not withheld from, the Legis-
lature by the Constitution, the evidence of which is to
be found within the proviso above quoted.

A mere reading of the section does not afford a
conclusive guide to the intention of the framers of
the Constitution, and presumably of the voters who
adopted it. But as is usual, and always permissible,
the evils which it was intended to avoid, and the con-
ditions existing at the time of its adoption, must be
looked to also. If the words of the section were
perfectly plain and admitted of but one interpreta-
tion, there would be no occasion to consult anything
but the language of the section itself. But they are
not. The expression "the tax now imposed for edu-
cational purposes" implies that there was then be-
ing raised by taxation a fund for the purpose of edu-
cation, other than through the common school system
already just provided for in the first part of the
section. Indeed, the phrase forms an exception to
the preceding clause, which treats of "education
other than in common schools" through taxes levied
for the purpose. It is, therefore, necessary to a
clear understanding of the proviso, and of the clause
with which it is most intimately connected, that we
look to see what taxes were then being imposed
for educational purposes, other than through the

common schools. We discover that the following
State institutions were then in existence: Asylum for
the Tuition of the Deaf and Dumb, established in
1822 (chap. 4, p. 171, Gen. Stats.), name since changed
by the statute to Kentucky Institute for Deaf Mutes
(sec. 275, Ky. Stats., 1903); Kentucky Institution for
the Education of the Blind (chap. 59a, p. 793, Gen.
Stats., Ky. Stats., 1903, sec. 299); Institution for the
Education and training of Feeble-Minded Children
(chap. 40, p. 611, Gen. Stats.), name since changed by
statute to Kentucky Institute for Feeble-Minded Chil-
dren, by sec. 264, Ky. Stats., 1903; State Normal
School for Colored Persons (chap. 96a, p. 1139, title
''Schools,'' art. 3, Gen. Stats., sec. 4527, Ky. Stats.);
and appellant college (1 Acts 1877-78, pp. 46, 116,
chaps. 424, 901; 1 Session Acts 1879-80, pp. 5, 10, 18,
38, 45, 73, 101, 137, 138, chaps. 49, 71, 157, 359, 402,
940, 1094, 1315). All of these institutions, established
and used solely for educational purposes, were then
owned and were being maintained by the State
through appropriations of public funds raised in
whole or in part by taxation. The proviso is then
understood to read as if those very institutions had
been named therein. That which is ambiguous, if not
meaningless, otherwise, now becomes apparent.

There are yet other sources from which light may
be drawn to aid in the more complete understanding
of the section. One is the history of the time, in-
cluding the troubles which had been encountered be-
fore the convention was called, and which, it may
fairly be assumed, acted in part upon the popular
judgment in bringing it into being to redraft the
organic law of the State. The cause of public educa-
tion had suffered at the hands of some of the previous
Legislatures. Funds distributed to the State in the
first Federal allotment for the benefit of education

had been diverted from their proper application, and others had been lost in mismanagement. Sometimes that which was raised for school purposes by taxation was "borrowed" by other departments, and, if not permanently diverted, it failed to reach in due time the ends for which it had been paid in by the people; the Federal aid extended to encourage agricultural and mechanical education particularly among the States had been turned over (that which had not been lost) to certain denominational schools or institutions of private enterprise who would undertake to do what was required by the act of Congress. All these things led to more or less abuse of the educational interests of the State, and embroiled them in bitter strife in the rivalries of contending factions. Such is the sum of the evils which had grown up in the midst of a system designed by the people as one of the mainstays of the State, and which, happily, in spite of these untoward circumstances, continued to thrive in a measure. No one dreamed when a new Constitution came to be framed, in 1891, that the Commonwealth had tired in her efforts to furnish the best system her resources could provide for the education of the youth of the State, or intended to take a step backward. But warned by the experience of the past, and desiring to be rid of those evils which had hampered, and, indeed, threatened, our whole system of State education, the convention sought to give the system stability, to make impossible the recurrence of the conditions just alluded to. Therefore we find the section of the Constitution dealing particularly with this subject placing forever beyond the reach of any other use the principal sum and its investments which had been raised and received for educational purposes. It was likewise made impossible that the annual contributions of taxes for school

purposes should be even temporarily diverted from their intended end. It was next so provided that the State could not embark in any further partnership educational enterprises, at least until the matter had been first approved by the people. In drawing the lines for safety about these matters which had been so disturbed and endangered, it was seen that the terms employed were so strict that possibly other institutions of learning belonging to the State, and forming no less a part of its system of popular education, might be hampered by a literal construction of the words. Hence the proviso that forms the exception to what had been said—that rescued what followed from what had gone before. We have seen that those institutions were as if named in the excepting clause. Therefore, as to them, the Legislature was left free to continue, and, indeed, they were in terms continued by the Constitution itself, till such time as it might be "changed by law." It could scarcely be claimed that the convention had the thought, or that the language used, in view of the conditions, admits of it, that for all the other means of public education the convention intended that the Legislature might deal with them as varying conditions seemed to demand, while of these particular institutions, also essentially and entirely educational, and so long established and maintained by the State as to be no longer experiments, the Legislature might not provide for them as their exigencies might seem to require from time to time. The language does not so restrict the purpose. It would have been unnatural and inharmonious with the general plan disclosed by the whole section. The taxes imposed for those institutions were to remain "until changed by law," implying plainly that existing appropriations were continued and further appropriations were al-

lowed, or all might be lowered or discontinued in part or entirely, as the lawmaking department of the government might deem most expedient.

Still another aid to a proper interpretation of the section is open to us; that is, a recourse to the debates of the constitutional convention. While recognizing that these are in no sense controlling, as they may not have represented the views of the great majority of the body whose votes incorporated the measure as finally adopted, and with even less assurance that they represent the views of the people whose votes ratified the instrument at last, still they may properly be consulted in arriving at the meaning of doubtful phrases. As observed by Judge Cooley (Cooley's Const. Lim., 66): "Where the proceedings clearly point out the purpose of the provision, the aid will be valuable and satisfactory." The section was reported from the committee on education without the proviso. It was objected to on the ground that it might be construed to prevent further appropriations to the very institutions which have been named above, including appellant. Members of the committee, including its chairman, a distinguished citizen and lawyer, disclaimed such purpose, and defended the report by the assertion that it could not be properly so construed. At that time a specific tax of one-half cent on the $100 was being collected by law for the maintenance of appellant college. Its friends in the convention feared that the committee's report, if adopted, would take away that aid, unless it were submitted specially to a vote of the people. A member of the committee (the delegate from Crittenden county) used this language in response to criticism of the stringency of the committee's report: "So far as I am individually concerned, let this convention use language in this report that will not

wipe out that half-cent tax, but leave it in such a con-
dition that the Legislature in the future, if the peo-
ple demand it, may deduct that half-cent tax, or add
more to it, or do as they please with it, according to
the necessities of the case. Let the people, through
their representatives, say whether they want this tax
to remain as it now stands or not, or increase it, or
build up other institutions in the State. Let that
matter rest with the people as the necessities of the
case may require in the future.'' (Page 4530.)
''The convention will bear in mind that the Legis-
lature has already all power, except as restricted by
this Constitution. Now, I ask, what restriction is
there in this section, or in any other section of the
Constitution, upon the Legislature, from appropriat-
ing any fund that it sees proper in aid of the Agri-
cultural and Mechanical College, the Normal School,
the school at Bowling Green, Center College, or any
other college in the State of Kentucky?'' (Page
4574.) As embodying these views, in so far as they
referred to institutions owned and controlled by the
State, the same member offered the following as a
substitute, in part, to the report of the committee:
''*Provided, however,* The tax now imposed for educa-
tional purposes shall remain until changed by law.''
It appears that the welfare of appellant college was,
however, that which elicited the most comment in the
debate, though it is equally clear the other institu-
tions named were not lost sight of. The member
from Fayette county, where appellant college is
located, who had spoken in its behalf before the con-
vention, and who was extremely solicitous in its be-
half—offered the following amendment to the substi-
tute: ''Amend the substitute by adding after the
word 'purposes' the words 'and for the endowment
and maintenance of the Agricultural and Mechanical

College.' ''    (Page    4576.)  The    substitute    as
amended was adopted.    The    debate    was    indulged
in extensively by the members, culminating in the
adoption of the amendments referred to, to meet the
views expressed by those who feared that without it
the Legislature would be powerless to provide by an-
nual appropriations for these very institutions so long
maintained and recognized as forming important
parts of the State's educational provision.

There is yet another aid to the interpretation of the
section: That is, its contemporaneous, practical con-
struction by all the other departments of the State
government, including the Legislature.    Every one
of these institutions has been sustained by annual
appropriations, and at nearly every session of the
Legislature since the adoption of the present Consti-
tution special additional appropriations have been
made to some of them. These acts have received the
approval of the various chief executives of the State,
and have not been questioned, so far we are advised,
by any other executive officer.    Thus for fourteen
years the legislative and executive departments have
construed that there was reserved to the Legislature
the plenary power with regard to the subject of edu-
cation conducted through the means of the institu-
tions just discussed; that the limitation upon its
power was as to extensions by means of other insti-
tutions.    This long and unquestioned construction,
coming up for actual decision at least several times
each year, ought to have and, by the rules of the
courts, does have, great weight in resolving any
doubt that the words themselves may have left as
to the meaning of the section.

The final canon of construction, too, is, where there
may be doubt, after all proper sources of aid have
been resorted to, whether the act of the Legislature

violates the Constitution, the doubt is resolved in favor of its constitutionality. Though we are left without doubt as to the meaning of the section, those who have doubts this last-named rule must control.

It is argued for appellee that there is really a difference between appellant and the other institutions particularized, in that the others are charitable institutions. While in a sense charitable in that they provide a means of education to classes of helpless unfortunates—not materially different in principle, though, from that required to be done by appellant— yet they are distinctively educational institutions. They are provided with teachers, not guards. Instruction, not restraint, not physical care alone, is the main idea. The inmates are received as pupils at ages when other pupils are thought to be most impressionable, and are required to leave the institution upon the completion of the courses of instruction provided there. This is true of all. Appellant and the State Normal School for Colored Persons are so similar in character that they may be deemed identical for purposes of classification.

Appellant seeks to uphold the appropriation on the ground that it is not a levying of taxes, and that only the levying of taxes for educational purposes is prohibited by the Constitution. We reject the argument as unsound. Appropriations of public funds and levying taxes to raise funds for the same end rest upon the same principle. If an object can not have a tax levied for it, if deemed necessary by the proper power, then no appropriation of public money can be made to it. Where the Constitution forbids the levying of a tax for a given purpose, it must be held that it also withholds the power of making appropriations for that purpose, unless there is something in the Constitution which particularly

Agricultural & Mechanical College v. Hager, Auditor.

and unmistakably authorizes the appropriation, which is not the case here.

The judgment of the circuit court must be reversed, and the cause remanded, with directions to overrule the demurrer to the petition, and for further proceedings not inconsistent herewith.

JUDGE CANTRILL absent.