MILLS, RESPONDENT, v. STEWART, SECRETARY OF STATE, ET AL., APPELLANTS.

(No. 5,904.)

(Submitted May 14, 1926. Decided June 14, 1926.)

[247 Pac. 332.]

*State—Assumption of Liability for Tort of Agent—Statutes and Statutory Construction — Constitutional Law — Legislative Appropriations for Public Purpose—Donations.*

Statutory Construction—When Recourse to Preamble Permissible.
1. Statutes must be construed with reference to the object sought to be accomplished, and whenever that object is not immediately apparent from the body of an Act, recourse may be had to the recitals in the preamble.

States—May Assume Liability for Negligence of Agents.
2. The state is not liable for the negligent acts of its agents unless, through the legislative department of government, it assumes liability.

Same—Assumption of Liability of Negligence of Agent—Statute—Constitution.
3. *Held*, that House Bill 398, Laws of 1925, page 416, assuming, on behalf of the state, liability for injuries sustained by a student in the University of Montana through the negligence of one of the state's agents and making an appropriation to discharge that liability, is not open to the objection that it contains a plurality of subjects in violation of section 23, Article V of the Constitution.

Same—Claims Against—Payment Without Previous Authority of Law Prohibited—Purpose of Constitutional Provision.
4. Section 29, Article V of the Constitution, prohibiting the legislature from providing for the payment of any claim made against the state without previous authority of law is intended to prevent the recognition and discharge of claims arising from *ultra vires* acts of officers or agents of the state and refers exclusively to claims arising out of contract, and therefore has no application to claims arising from tortious acts of the state's agents.

Same—Assumption of Liability for Negligence of Agent—Duty of State Board of Examiners—Constitution.
5. House Bill No. 398, Laws of 1925, page 416, above, referring the matter of the claim against the state for personal injuries sustained through the negligence of its agent to the state board of examiners, for adjustment, *held* not to transgress the provision of section 20, Article VII of the Constitution, that no claim against the state shall be passed upon by the legislative assembly unless first considered by said board.

1. See 25 R. C. L. 1013.
2. See 25 R. C. L. 407.

Same—Appropriations—Power of Legislature—Taxation.

6. The power to appropriate public funds and the power to levy and collect taxes are identical, *i. e.:* the legislature has power to appropriate public money for any purpose for which taxes may be levied and collected, and for none other.

Same—Legislative Appropriations—"Public Purpose"—Gifts—Constitution.

7. If a legislative appropriation is for a "public purpose," within the meaning of section 1, Article XIII, and as limited in section 38, Article V, it is not a donation; the term "donation" being synonymous with "gift," and the word "gift" comprehending an appropriation for the relief of one who has no legal claim upon which to base it.

Same—"Legal" Claim Against State—Definition—Gifts—Constitution.

8. A "legal claim" against the state for the discharge of which the legislature may make an appropriation without being open to the charge that by its act it is making a donation or gift is one which is recognized or authorized by the law of the state, or one which might be enforced in an action at law if the state were a private corporation.

Same—Legislature may Assume Liability for Negligence of State's Agent—Constitution.

9. The legislative assembly acts in virtue of inherent authority and not through authority delegated to it; hence, not being prohibited from doing so by the state Constitution nor by the supreme law of the land, it could properly, as it did by House Bill 398, Laws of 1925, assume liability on behalf of the state for injuries inflicted upon an individual by the negligent act of one of the state's agents.

Same—Appropriation for Public or Private Purposes—Determination Primarily for Legislature.

10. Primarily the determination of the question whether a legislative appropriation of the state's moneys is made for a public or private purpose within the meaning of Constitution belongs to the legislature, and the courts will indulge every reasonable presumption in favor of a legislative decision.

Same—Appropriations for Public Purposes—Considerations Entering into Determination of Question.

11. In determining whether a purpose for which a legislative appropriation is public, courts must be governed largely by the course and usage of government, the objects for which appropriations have been made through an extended course of legislative action, and what objects and purposes have been considered necessary for the support and for the proper use of government; whatever lawfully pertains to them and is sanctioned by time and the acquiescence of the people will be held to belong to the public use.

Same—Appropriation for Payment of Damages for Personal Injuries Sustained by Student at State University by Negligence of State Agent Held for Public Purpose.

12. *Held,* under the above rule (par. 11), in view of long-continued appropriations of public moneys, sanctioned by the people, for public schools and state colleges and for whatever contributes to make the state's system of education effective, as for a public purpose,

---

6. See 25 R. C. L. 398.

[76 Mont. 429.]

an appropriation made to compensate a student at the University of Montana for injuries sustained in a University building through the negligence of a state agent has a tendency directly to encourage attendance at such institution and thus education, and was therefore for a public purpose and not intended as a donation.

Statutes—Constitutionality—Rule.

13. Where a statute is assailed as unconstitutional the question presented is not whether it is possible to condemn it but whether it is possible to uphold it; and it will not be declared invalid unless its conflict with the Constitution is placed beyond a questionable doubt.

States—Assumption of Liability for Tort of Agent—State may Prescribe Terms.

14. Where the state assumes liability for a tort of its agent, it may limit the liability and prescribe such terms as it sees fit to impose as well as the tribunal before which it will answer.

Statute—Whether Legislation Wise or Unwise not Question for Courts.

15. Whether particular legislation is wise or unwise is a matter for legislative decision and one not open to consideration by the courts.

[1] Statutes, 36 Cyc., p. 1110, n. 54; p. 1132, n. 84; p. 1134, n. 99.
[2] Colleges, etc., 11 C. J., sec. 17, p. 991, n. 12 New; sec. 18, p. 991, n. 24 New. Rex Non Potest Peccare, 34 Cyc., p. 1760, n. 25. States, 36 Cyc., p. 828, n. 6 New; p. 865, n. 4 New; p. 881, n. 13.
[3] Statutes, 36 Cyc., p. 1025, n. 9.
[4] States, 36 Cyc., p. 901, n. 30 New.
[5] States, 36 Cyc., p. 903, n. 49.
[6, 7] Donations, 19 C. J., p. 444, n. 55. States, 36 Cyc., p. 894, n. 33; p. 895, n. 42. Taxation, 37 Cyc., p. 719, n. 2.
[8] Legal, 36 C. J., sec. 3, p. 976, n. 90. States, 36 Cyc., p. 911, n. 45.
[9] Constitutional Law, 12 C. J., sec. 237, p. 805, n. 46. States, 36 Cyc., p. 881, n. 13.
[10] Constitutional Law, 12 C. J., sec. 222, p. 794, n. 23. States, 36 Cyc., p. 894, n. 33.
[11] Constitutional Law, 12 C. J., sec. 219, p. 787, n. 88. States, 36 Cyc., p. 894, n. 33.
[12] States, 36 Cyc., p. 894, n. 33.
[13] Constitutional Law, 12 C. J., sec. 220, p. 787, n. 96; sec. 222, p. 797, n. 34.
[14] States, 36 Cyc., p. 881, n. 13; p. 904, n. 54.
[15] Constitutional Law, 12 C. J., sec. 390, p. 887, n. 38.

*Appeal from District Court, Lewis and Clark County; W. H. Poorman, Judge.*

SUIT by R. M. Mills against C. T. Stewart, Secretary of the State of Montana, and others, as the Board of Examiners of the State of Montana, to enjoin the board from pass-

13. See 6 R. C. L. 75.
15. See 25 R. C. L. 964.

ing upon a claim for personal injuries sustained by reason of the negligence of an agent of the state, in payment of which claim a legislative appropriation had been made. Judgment for plaintiff, and defendants appeal. Reversed and remanded.

*Mr. L. A. Foot,* Attorney General, and *Mr. A. H. Angstman,* Assistant Attorney General, for Appellants, submitted a brief; *Mr. Angstman* argued the cause orally.

The claim of Rietz was passed upon by the legislature before it was presented to, considered by, or acted upon by the board of examiners. This is expressly prohibited by section 20, Article VII, of the Montana Constitution relating to the powers of the board of examiners, which provides in part: "And no claim against the state, except for salaries and compensation of officers fixed by law, shall be passed upon by the legislative assembly without first having been considered and acted upon by said board." For this reason alone, the statute is of doubtful validity. (*Davis* v. *State,* 30 Ida. 137, Ann. Cas. 1918D, 911, 163 Pac. 373; *Wilkinson* v. *State,* 42 Utah, 483, 134 Pac. 626; *State* v. *Hallock,* 20 Nev. 326, 22 Pac. 123.)

The bill attempts to make an appropriation and, after reciting how the injuries were sustained, also provides: "If the said board of examiners finds that such injuries were so sustained, damages therefor shall constitute a legal and valid claim against the State of Montana." This would seem to bring the statute in conflict with sections 23 and 33 of Article V of the Constitution.

If the facts as found by the legislature giving rise to the injuries of Rietz are correct, then, at most, the claim is a moral obligation of the state. But appropriations may not be made from the general fund of the state to pay moral obligations. This because of section 11, Article XII, of the Constitution, which provides in part: "Taxes shall be levied and collected by general laws and for public purposes only."

An appropriation to pay a moral obligation is nothing but a gift, and the legislature is prohibited from making gifts by section 1 of Article XIII of our Constitution. (*State ex rel. Mills* v. *Dixon,* 66 Mont. 76, 213 Pac. 227. See, also, *Miller* v. *Dunn,* 72 Cal. 462, 1 Am. St. Rep. 67, 14 Pac. 27; *Woodall* v. *Darst,* 71 W. Va. 350, Ann. Cas. 1914B, 1278, 44 L. R. A. (n. s.) 83, 77 S. E. 264, 80 S. E. 367; 25 R. C. L. 402.)

Generally speaking, a state is not liable for the torts of its officers or agents; unless assumed by the legislature. But recourse may be had against such officers or agents. (25 R. C. L., p. 407.)

*Mr. Hugh R. Adair,* for Respondent, submitted a brief, and argued the cause orally.

The legislative appropriation for the Rietz claim does not partake of the nature of a gift or donation, but is what may be termed a moral obligation of the state. (*State* v. *Carter,* 30 Wyo. 22, 28 A. L. R. 1089, 215 Pac. 477; *Fairfield* v. *Huntington,* 23 Ariz. 528, 22 A. L. R. 1438, 205 Pac. 814; *Chapman* v. *State,* 140 Cal. 690, 43 Am. St. Rep. 158, 38 Pac. 457; 36 Cyc. 901, 902.)

The objection that the legislative assembly is attempting to usurp the functions of the judiciary, in attempting to decide that the claim is in effect a legal one, and that the hearing, determination and auditing of the claim by the board involves questions which must be decided by the courts, it would seem, is fully met by the well-considered opinion in the recent case of *State* v. *Kelly,* 27 N. M. 477, 202 Pac. 524.

It would also seem that the objection that the bill is in conflict with sections 23 and 33, of Article V, of the Constitution, is likewise without merit, for, clearly, the bill embraces but one subject, and that subject is clearly expressed in the title of the Act.

*Mr. E. G. Toomey, Amicus Curiae,* argued the cause orally.

MR. JUSTICE HOLLOWAY delivered the opinion of the court.

George A. Rietz, a resident of Lewis and Clark county, was injured while a student at the state university at Missoula. He contends that on the day he registered (September 25, 1923), he was assigned a room on the second floor of the "South Hall" dormitory building; that he was not familiar with the surroundings; that on the same floor and near his room were two doors about two feet apart, one of which led into the bathroom and the other into the elevator shaft; that neither door was locked, and neither one was marked or labeled, and there was not anything to indicate which door led into the bath-room or which one led into the elevator shaft; that the hall was dimly lighted, and when he undertook to go to the bath-room, through mistake he opened the door leading into the elevator shaft, and, the shaft being unguarded and the elevator above that floor at the time, he fell down the shaft to the bottom of the pit and sustained serious, permanent injuries, on account of which he incurred large expenses, only a part of which has been repaid to him; a part of such expenses was paid by the university.

These matters having been brought to the attention of the members of the Nineteenth Legislative Assembly, an Act was passed and approved (House Bill 398, Laws of 1925, p. 416), which in a preamble sets forth the substance of Rietz' contention. The Act then provides that if Rietz presents a claim to the state board of examiners within three months after the approval of the Act, the board shall hear and determine the claim, and if it shall find that the injuries were sustained as contended by Rietz, damages therefor in such amount, not exceeding $7,500, as the board shall determine to be just and equitable, "shall constitute a legal and valid claim against the state of Montana." The Act then makes an appropriation of $7,500, or so much thereof

as may be necessary to pay the claim, if it is allowed by the board.

Rietz made due presentation of his claim, and the board appointed a time for hearing; but before final action was had this suit was instituted by a resident taxpayer to secure an injunction restraining the board from proceeding further with the matter. From an order granting the injunction the board appealed.

The complaint in the action proceeds upon the theory that House Bill 398 is unconstitutional, and in consequence thereof any action taken by the board must be void. This theory was adopted by the trial court, and the correctness of it is the sole question presented by the appeal.

1. It is contended that the Act contains more than one subject, in violation of the provisions of section 23, Article V of the state Constitution, and whether it does or does not depends upon the proper analysis of the Act itself.

It is elementary that every statute is to be construed [1] with reference to the object which it is intended to accomplish (*Lewis* v. *Northern Pac. Ry. Co.*, 36 Mont. 207, 92 Pac. 469; *Pohl* v. *Chicago, M. & St. P. Ry. Co.*, 52 Mont. 572, 160 Pac. 515; 36 Cyc. 1110), and whenever that object is not immediately apparent from the body of the Act, recourse may be had to the recitals in the preamble (*Price* v. *Forrest*, 173 U. S. 410, 19 Sup. Ct. Rep. 434, 43 L. Ed. 749; 36 Cyc. 1132), for the preamble has been termed aptly, "a key to open the minds of the makers of the Act" (*Commissioners* v. *Pemsel*, A. C. 1891, p. 531, 61 Law. J. Q. B. 265).

If the contention advanced by Rietz is well founded in [2] fact, his injuries resulted proximately from the negligence of the person responsible for the care and management of the dormitory building, and against such person he has a valid, legal claim which he might enforce in an ap-

propriate action at law. The dormitory building is the property of the state, and the state is charged with its management and control, and, while it does not have any moral right to commit a tortious act, it has the same capacity to do so as any other corporation. (1 Cooley on Torts, p. 208; Bishop on Noncontract Law, sec. 749.) The maxim of the English law, "The King can do no wrong," does not find a place in the jurisprudence of this country. (*Langford* v. *United States,* 101 U. S. 341, 25 L. Ed. 1010.) The state, like any other corporation, can act only through agents, and if the state of Montana were a private corporation, it would be responsible to Rietz in an action at law for the damages resulting proximately from the negligence of its agent in charge of the dormitory building. But the state is a public corporation, and out of considerations of public policy the doctrine of *respondeat superior* does not apply to it unless assumed voluntarily. In other words, the state is not liable for the negligent acts of its agents unless through the legislative department of government it assumes such liability. (*Lewis* v. *State,* 96 N. Y. 71, 48 Am. Rep. 607; *Murdock Parlor Grate Co.* v. *Commonwealth,* 152 Mass. 28, 8 L. R. A. 399, 24 N. E. 854; *Clodfelter* v. *State,* 86 N. C. 51, 41 Am. Rep. 440; *Billings* v. *State,* 27 Wash. 288, 67 Pac. 583; 36 Cyc. 881.)

With these principles in mind, a consideration of the recitals [3] of the preamble, with the body of the Act, discloses with reasonable certainty that it was the intention of the legislature to assume, on behalf of the state, liability for the negligence, if any, of the agent through whose act Rietz was injured, and to make an appropration to discharge that liability. The Act deals with but one subject—assumption by the state of liability for the negligence, if any, of its agent. The appropriation is merely incidental to the principal purpose of the Act, or the means by which that purpose is to be carried into effect. The Act is not open to the objection that it contains a plurality of subjects. (*Evers* v. *Hudson,* 36 Mont. 135,

92 Pac. 462; *State* v. *Ross*, 38 Mont. 319, 99 Pac. 1056; *State ex rel. Campbell* v. *Stewart*, 54 Mont. 504, Ann. Cas. 1918D, 1101, 171 Pac. 755; *Amos* v. *Mosley*, 74 Fla. 555, L. R. A. 1918C, 482, 77 South. 619.)

2. It is next contended that the Act infringes upon the [4] provisions of section 29, Article V, which section declares: "No bill shall be passed giving any extra compensation to any public officer, servant or employee, agent or contractor, after services shall have been rendered or contract made, nor providing for the payment of any claim made against the state without previous authority of law, except as may be otherwise provided herein."

The meaning of the first portion of the section is perfectly clear: It is beyond the power of the legislature to award extra compensation for the services of any officer, agent, servant or employee of the state after the services have been performed (*Lloyd* v. *Silver Bow County*, 11 Mont. 408, 28 Pac. 453), or, after a contract has been awarded, to allow extra compensation to the contractor for the work contemplated by his contract. The declaration that the legislature shall not provide for the payment of any claim made against the state without previous authority of law was apparently intended to prevent the recognition and discharge of claims arising from *ultra vires* acts of officers or agents of the state. It refers exclusively to claims arising out of contract and has no application here. This is the history of like provisions found in other state Constitutions. (*Miller* v. *Dunn*, 72 Cal. 462, 1 Am. St. Rep. 67, 14 Pac. 27.)

3. It is contended, further, that in enacting House Bill [5] 398 the legislature transgressed the provisions of section 20, Article VII, which declares: "The Governor, Secretary of State and Attorney General shall constitute * * * a board of examiners, * * * and no claim against the state, except for salaries and compensation of officers fixed by law, shall be passed upon by the Legislative Assembly

without first having been considered and acted upon by said board.''

It is sufficient answer to this contention to say that the legislature did not assume to pass upon the Rietz claim, but by the very terms of the Act the entire matter was referred to the board of examiners, the body created by the Constitution, to hear and determine all claims against the state.

4. Finally it is urged that the Act contravenes the provi-[6, 7] sions of section 11, Article XII, and section 1, Article XIII, which declare:

Section 11, Article XII: ''Taxes shall be levied and collected by general laws and for public purposes only.'' And section 1, Article XIII: ''Neither the state, nor any county, city, town, municipality, nor other subdivision of the state shall ever give or loan its credit in aid of, or make any donation or grant, by subsidy or otherwise, to any individual, association or corporation, or become a subscriber to, or a shareholder in, any company or corporation, or a joint owner with any person, company or corporation, except as to such ownership as may accrue to the state by operation or provision of law.''

The power to appropriate public funds and the power to levy and collect taxes are identical. (*Panchot* v. *Leet,* 50 Mont. 314, 146 Pac. 927; *Gem Irrigation District* v. *Van Deusen,* 31 Ida. 779, 176 Pac. 887; *College* v. *Hager,* 121 Ky. 1, 87 S. W. 1125; 1 Cooley on Taxation 4th ed., sec. 177.) In other words, the legislature has authority to appropriate public money for any purpose for which taxes may be levied and collected, and for no other purpose. But a reference to the history of half a century ago discloses that aid extended to railroads and other like business enterprises was frequently held to be for a public purpose (*Olcott* v. *Fond du Lac,* 16 Wall. 678, 21 L. Ed. 382; *Hagler* v. *Small,* 307 Ill. 460, 138 N. E. 849), and it is made reasonably apparent that the object of the limitations in section 1, Article XIII, and in section

38, Article V, of our state Constitution, was to prevent either the legislature or the courts of this state, including aid extended to such business enterprises within the meaning of the term "public purpose," and this is the view heretofore expressed by this court (*State ex rel. Cryderman* v. *Weinrich,* 54 Mont. 390, 170 Pac. 942). Our Constitution having thus restricted the meaning of the term "public purpose," it is apparent at once that if a particular appropriation is made for a public purpose, it is not a donation, and, conversely, if it constitutes a donation it is not for a public purpose.

But it is insisted that in *State ex rel. Mills* v. *Dixon,* 66 Mont. 76, 213 Pac. 227, this court, in effect if not in fact, decided that a claim of the character of the Rietz claim is a donation.

The term "donation" employed in our Constitution is synonymous with the term "gift" found in the Constitution of California, and in *State ex rel. Mills* v. *Dixon* this court did not go farther than did the supreme court of California, in *Conlin* v. *Board,* 99 Cal. 17, 37 Am. St. Rep. 17, 21 L. R. A. 474, 33 Pac. 753, where it was said: "An appropriation of money by the legislature for the relief of one who has no legal claim therefor must be regarded as a gift within the meaning of that term, as used in this section." (Sec. 31, Art. IV, Constitution of California.)

But what is a legal claim? Certainly the expression was [8] not employed by this court or the California court to designate a claim enforceable against the state by the ordinary process of law, for, speaking generally, there are not any such claims. It is elementary that a state cannot be sued without its consent or be compelled against its will to discharge any obligation. (*Langford* v. *King,* 1 Mont. 33; *Fisk* v. *Cuthbert,* 2 Mont. 593; *State* v. *Kenney,* 9 Mont. 389, 24 Pac. 96; *State ex rel. R. M. F. Co.* v. *Toole,* 26 Mont. 22, 91 Am. St. Rep. 386, 55 L. R. A. 644, 66 Pac. 496.) If the

o

term "legal claim" as applied to a state has any meaning, it must refer to a claim which is recognized or authorized by the law of the state, or one which might be enforced in an action at law if the state were a private corporation, and this is the sense in which the term was employed in *State ex rel. Mills* v. *Dixon,* and apparently it was used in the same sense in *Conlin* v. *Board.*

The question then arises: Was it within the power of the [9] legislature to give recognition to the Rietz claim by assuming a limited liability for the negligence, if any, of the state's agent?

Our legislative assembly acts in virtue of inherent authority and not through authority delegated to it (*State ex rel. Sam Toi* v. *French,* 17 Mont. 54, 30 L. R. A. 415, 41 Pac. 1078; *Cruse* v. *Fischl,* 55 Mont. 258, 175 Pac. 878; *Butte & Superior Min. Co.* v. *McIntyre,* 71 Mont. 254, 229 Pac. 730), and since it is not prohibited by the state Constitution or by the supreme law of the land to assume liability for the torts of the state's agents, it may do so. In 26 R. C. L. 66, it is said: "The power of the legislature to make the state or one of its subdivisions liable for injuries inflicted by it upon an individual is unquestioned even if there was no liability at common law."

Reitz has a valid claim against the agent through whose negligence he was injured, and if, in advance of the injury, the state had, by general law, assumed liability for the negligence of its agents in charge of the university buildings, there would not be any dissent in the authorities from the conclusion that an appropriation to discharge such liability would be for a public purpose. But in California it has been held that a state may not assume and discharge a liability for the negligent act of its agent after the resulting injury has occurred, and this upon the theory that, under such circumstances, the appropriation made to discharge the liability constitutes a gift. (*Bourn* v. *Hart,* 93 Cal. 321, 27 Am. St. Rep.

203, 15 L. R. A. 431, 28 Pac. 951; *Chapman* v. *State,* 104 Cal. 690, 43 Am. St. Rep. 158, 38 Pac. 457.) The contrary conclusion was reached in Iowa (*Metz* v. *Soule,* 40 Iowa, 236), and in principle in West Virginia (*Woodall* v. *Darst,* 71 W. Va. 350, Ann. Cas. 1914B, 1278, 44 L. R. A. (n. s.) 83, 77 S. E. 264, 80 S. E. 367), and in Massachusetts (*Re Opinion of Justices,* 211 Mass. 608, 98 N. E. 338; *Opinion of Justices,* 240 Mass. 616, 23 A. L. R. 610, 136 N. E. 157), while the decision in *Bourn* v. *Hart* is disapproved by the supreme court of Wyoming (*State* v. *Carter,* 30 Wyo. 22, 28 A. L. R. 1089, 215 Pac. 477) and by other courts.

We are unable to appreciate the distinction drawn by the California court between a claim of this character founded upon a statute enacted prior to the time the injury occurred and a claim predicated upon a statute enacted after the injury. In 26 R. C. L. 64, it is said: "The power of the legislature to extend the liability of the state or of municipal corporations to pay for injuries caused to private individuals is not limited to the establishment of a general rule for the future."

We do not discover any provision of our Constitution which forbids the legislature to assume liability for injury resulting from the negligence of the state's agent, whether the liability is assumed before or after the injury occurs, and to say that the state may assume such liability but may not discharge it is simply to make the law ridiculous. (*United States* v. *Realty Co.,* 163 U. S. 427, 16 Sup. Ct. Rep. 1120, 41 L. Ed. 215.) Common sense is the essence of the law, and that which is not good sense is not good law.

By assuming a limited liability for the negligence, if any, of [10] the state's agent through whose act Reitz was injured, the legislature has declared that the appropriation to meet such liability is for a public purpose. While that determination is not conclusive upon us, it is entitled to the most respectful consideration.

It is frequently difficult in practice to determine whether the particular purpose for which an appropriation is made is

public or private. Primarily the determination of the question belongs to the legislature, and the court will indulge every reasonable presumption in favor of a legislative decision. (*Lewis and Clark County* v. *Industrial Accident Board*, 52 Mont. 6, L. R. A. 1916D, 628, 155 Pac. 268; 1 Cooley on Taxation, sec. 187.) In Cooley on Constitutional Limitations, p. 184, the author says: "Taxes should only be levied for those purposes which properly constitute a public burden; but what is for the public good and what are public purposes and what does properly constitute a public burden, are questions which the legislature must decide upon its own judgment and in respect to which it is vested with a large discretion which cannot be controlled by the courts, except perhaps where the action is clearly evasive and where under pretense of a lawful authority it has assumed to exercise one that is unlawful."

In *Brodhead* v. *Milwaukee*, 19 Wis. 624, 88 Am. Dec. 711, the court said: "The objects for which money is raised by taxation must be public, and such as subserve the common interest and well-being of the community required to contribute. To justify the court in arresting the proceedings and declaring the tax void, the absence of all possible public interest in the purposes for which the funds are raised must be clear and palpable—so clear and palpable as to be perceptible by every mind· at the first blush."

In *Sharpless* v. *Mayor*, 21 Pa. 147, 59 Am. Dec. 759, it is said: "But to make a tax law unconstitutional on this ground, it must be apparent at first blush, that the community taxed can have no possible interest in the purpose to which their money is to be applied."

Referring to these cases, Cooley, in his work on Taxation says: "These are very strong and sweeping assertions but they are supported by many others equally emphatic and comprehensive which are to be met with in the adjudications of courts." (1 Cooley on Taxation, sec. 189.)

While these cases have to do with statutes imposing taxes, the doctrine announced by them is equally applicable here, for,

as observed above, it is axiomatic that the power to tax and the power to appropriate public funds are identical.

[11] In determining whether a purpose for which an appropriation is made is public, courts must be governed largely by the course and usage of government, the objects for which appropriations have been made through an extended course of legislative action, and what objects and purposes have been considered necessary to the support and for the proper use of government. Whatever lawfully pertains to them and is sanctioned by time and the acquiescence of the people will be held to belong to the public use. (*Loan Association* v. *Topeka,* 20 Wall. (U. S.) 655, 22 L. Ed. 455.) [12] That an appropriation of money to encourage education by means of public schools and colleges is for a public purpose is too well settled to require the citation of authorities, and it is equally well established that whatever contributes to make that system of education effective for the purpose intended is also a public purpose. For many years this state, through the legislature, has provided, from the public funds, money to assist in defraying the traveling expenses of students attending any of the units of the University (sec. 860, Rev. Codes 1921), and for free text-books to children attending the public schools (sec. 1198, Rev. Codes 1921), and the fact that no question has been raised as to the power of the legislature to so use the public funds is very persuasive evidence that such use meets popular approval, and long-continued acquiescence adds force to the legislative decision that such use is public. (*State ex rel. Cotter* v. *District Court,* 49 Mont. 146, 140 Pac. 732.)

We do not think it too far-fetched to say that a disposition manifested by the state to compensate a student who, while attending the University, is seriously injured through the negligence of the state's agent, contributes directly to encourage attendance at such institution. In any event, this court is committed to the doctrine that when a statute is assailed as unconstitutional the question presented is not whether it is possible [13] to condemn it, but whether it is possible to uphold it;

and it will not be declared invalid unless its conflict with the Constitution, in the judgment of the court, is placed beyond a reasonable doubt. (*State ex rel. Fenner* v. *Keating,* 53 Mont. 371, 163 Pac. 1156.)

We are not satisfied that in enacting House Bill 398 the legislature transgressed any provision of the state Constitution to which our attention has been called, and it follows that [14] the statute should be upheld. Since it was altogether optional with the state whether it would assume any liability, it could limit the liability which it was willing to assume, and could prescribe such terms as it saw fit to impose, including the designation of the board of examiners as the tribunal be-[15] fore which it would answer. Whether the policy of the legislation is wise or otherwise is a matter for legislative decision and one not open to consideration by the courts. (*Wheeler & Motter Merc. Co.* v. *Moon,* 49 Mont. 307, 141 Pac. 665; *State ex rel. Board* v. *District Court,* 62 Mont. 275, 204 Pac. 600; *Angell* v. *Bank,* 72 Mont. 345, 232 Pac. 90.) It is not the province of the courts to run a race of opinions with the legislature upon questions of policy or expediency.

It is our conclusion that the appropriation to pay the Rietz claim, if established, does not constitute a donation (*Fairfield* v. *Huntington,* 23 Ariz. 528, 22 A. L. R. 1438, 205 Pac. 814), and that the complaint does not state facts sufficient to constitute a cause of action, and hence will not support the injunction.

The order is reversed and the cause is remanded to the district court, with direction to dismiss the complaint.

*Reversed.*

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES GALEN, STARK and MATTHEWS concur.