E. H. ROLLINS & SONS v. BOARD OF COM'RS OF GRAND COUNTY.

(Circuit Court of Appeals, Eighth Circuit.   August 2, 1912.)

No. 3,459.

1. LIMITATION OF ACTIONS (§ 48*)—COUNTY WARRANTS—ACCRUAL OF RIGHT.
    Limitation does not begin to run against a suit to enforce payment of
county warrants, which, under the statute, are payable in the order of
their registration, subject to a provision that such warrants shall be re-
ceivable for taxes, until there is sufficient money in the treasury appli-
cable thereto to pay such warrant.
    [Ed. Note.—For other cases, see Limitation of Actions, Cent. Dig. §§
259–265, 351; Dec. Dig. § 48.*]

2. COUNTIES (§ 170*)—WARRANTS—SUIT TO ENFORCE PAYMENT—PAYMENT:
    A statutory provision which is in force at the time county warrants
are issued, that they shall be paid in the order of their presentation and
registration, creates a contract for precedence with a warrant holder
which cannot be impaired by subsequent legislation providing that only
a certain part of the tax collected each year for current expenses shall
be applied to the payment of outstanding warrants; and a warrant
holder may maintain a suit in equity to enjoin the county from refusing
to apply the taxes in accordance with the contract.
    [Ed. Note.—For other cases, see Counties, Cent. Dig. §§ 256–259; Dec.
Dig. § 170.*]

3. WORDS AND PHRASES—"BUT."
    The word "but" is defined as "except"; "on the contrary"; "yet" or
"still," as a word of limitation (citing Words and Phrases, vol. 1, p. 926).

Appeal from the Circuit Court of the United States for the District
of Colorado.

Suit in equity by E. H. Rollins & Sons, a corporation, against
the Board of Commissioners of Grand County, Colo.   Decree for
defendant, and complainant appeals.   Reversed.

Horace N. Hawkins and Stephen W. Ryan, for appellant.

Jesse R. Allphin (Benjamin C. Hilliard, on the brief), for appel-
lee.

Before ADAMS and SMITH, Circuit Judges, and REED, Dis-
trict Judge.

SMITH, Circuit Judge.   The complainant, a citizen of Maine,
filed its bill against the defendant, a municipal corporation in the
state of Colorado, alleging that it was the owner and holder of
62 county warrants of Grand county, issued at various dates from
October 3, 1882, to January 8, 1890, amounting, without interest,
to $2.007.13; that each of said warrants was presented for payment
to the county treasurer of said county, not paid for want of funds,
and duly registered.   The bill further charges that none of said
warrants have ever been paid, and alleges that at the time of the
issuance thereof, and each of them, the respondent was required
to levy upon the taxable property of the county a sum not in ex-
cess of 10 mills of the total value thereof with which to produce
a fund to redeem the said warrants; that said tax was regularly

levied down to 1890, but that for the years 1891 to 1894, inclusive, but 3 mills was applied to the redemption of the outstanding warrants of the class and character of the complainant's, and that commencing with the year 1895, and ever since that time, the defendants levied a tax of 5 mills on each and every dollar of valuation; that the county has received county warrants, without reference to the date of their registration, in payment of taxes; that the amount collected since the year 1891 by the 3 and 5 mill levies has been scarcely sufficient to pay the interest upon the warrant debt of the respondent; that the complainant is not entitled to execution against the respondent, and a mere judgment would therefore be unavailing, and complainant prays:

(a) That a judgment may be rendered herein for the face of your orator's warrants and the accrued interest thereon up to and including the date of the rendition of said judgment.

(b) That a master in chancery be appointed to take an account of the warrants outstanding of the respondent county, together with the date of the registration of the same, to the end that it may be determined what amount of warrants have been received in payment of taxes, or otherwise, without regard to the order of their registration, thereby impairing the obligation of the warrants of your orator.

(c) That said master may report to your honors at what time and when your orator's warrants would have been paid in due course but for the unlawful diversion of said funds by the redemption of warrants received in payment for taxes.

(d) That the said master report to your honors what fund would have been produced by the proper levy of taxes to pay the warrants of your orator and others similarly situated since the year 1890, if such proper levies had been made, and that, in that connection, he inform your honors by his report what levy would be necessary to produce a fund upon the present valuation which would be equivalent to the fund which would have been produced upon the former valuation, had such levies been duly and in due time made and collected.

(e) That a writ of injunction be issued against the respondent to restrain it from the further diversion of funds until the judgment herein to be rendered shall have been fully paid in accordance with the date of the registration of the warrants upon which said judgment is to be founded.

(f) That a writ of injunction having the force and effect of a writ of mandamus may be issued out of this honorable court, commanding the respondent to make such proper levies upon the present assessed valuation of Grand county as will restore your orator and all others similarly situated to the position that they would have been in, as nearly as may be, but for the wrongs and grievances herein complained of.

(g) That, from time to time, such other and further orders, general and specific, may be made by your honors as will effectuate the object and purposes for which this suit is brought, and that

your orator may have such writs, processes, and other aids of the court as may, from time to time, be found necessary to accomplish that purpose.

(h) For the costs of this suit.

(i) And for all such other, further, and general relief as to a court of equity may seem meet in the premises.

To this bill the respondent filed a demurrer, as follows:

"IV. That it appears by said bill of complaint, and from the allegations therein, that the right of action, if any, set up in said bill did not accrue, if it accrued at all, to said complainant within three years before the bringing of this suit, and that complainant's right to bring and maintain said action was, long prior to the bringing of said suit, barred by the provisions of section 4066 of the Revised Statutes of 1908 of the state of Colorado; the same being section 2168 of the Revised Statutes of 1883, and section 1676 of the General Laws of 1877, of the state of Colorado.

"V. That it appears by the said bill, and from the allegations therein, that the right of action, if any, set up in said bill did not accrue, if it accrued at all, to the said complainant within six years before the bringing of this suit, and complainant's right to bring and maintain said action was, long prior to the bringing of said suit, barred by the provision of section 4061 of the 1908 Revised Statutes of the state of Colorado; the same being section 2163 of the Revised Statutes of 1883, and section 1671 of the General Laws of 1877, of the state of Colorado.

"VI. That it appears by said bill of complaint and the allegations therein that the complainant and its assignors had full knowledge of the matters and facts complained of and set up in said bill, to wit, that the proper officers of said Grand county, Colorado, had committed the wrongs and injuries complained of, and had failed and refused, and were intending to continue such failure and refusal, to do the matters and things now sought to be enjoined upon them by complainant for more than 18 years, and that it does appear from the facts stated in said bill of complaint that complainant and its assignors did not diligently avail themselves of all, or any, of their legal remedies provided by law in such case; and it does appear from the facts stated in said bill of complaint that complainant and its assignors by their laches, had lost their right to such remedies long prior to the institution of this suit, and that the facts stated in said bill of complaint are not sufficient, in equity, to relieve said complainant and its assignors from their laches, and that, according to the rules and practices of courts of equity, it would now be inequitable and against good conscience to grant the complainant the relief prayed for in said bill of complaint, or any relief whatever.

"VII. The respondent further demurs specially to those parts and portions of said bill complaining of the failure to collect taxes in cash, and the diversion and misapplication of the funds and moneys of said respondent county, during each and all the years from 1882 to 1890, inclusive, for that it appears from the allegations in said bill that during each and all of said years said complainant and its assignors had a plain, adequate, and complete remedy at law by writ of mandamus to compel the treasurer and other proper officers of said Grand county to collect the taxes during each and all of said years in cash, and to apply the same to the payment of the indebtedness of said respondent county in the manner required by law, as alleged in the bill; and that said complainant and its assignors, with full knowledge of the diversion and misapplication of said funds and moneys, did not at any time during all such years 1882 to 1890, inclusive, or at any time, diligently, or at all, avail themselves of said legal remedy by writ of mandamus, or otherwise, to compel said treasurer and other officers of said respondent county to discharge their legal duties in the premises; and that, according to the rules and practices of courts of equity, it would now be inequitable and against good conscience to grant complainant the relief prayed for in the bill of complaint—that is, to levy and collect additional taxes for the years 1882 to 1890, inclusive—or to grant complainant any relief whatever on account of said diversion and misapplication of said funds and moneys during said years.

"VIII. Respondent demurs specially to those parts and portions of said bill of complaint complaining of the failure and neglect of the proper officers of said respondent county to levy and collect certain taxes for the year 1891, and hitherto, as alleged in said bill of complaint, for that it appears from the allegations in said bill that during each and all of said years said complainant and its assignors had a plain, adequate, and complete remedy at law by writ of mandamus to compel and require said officers to levy and collect said taxes during each and all of said years, and to apply the same to the payment of the indebtedness of said Grand county, all as required by law, as alleged in said bill of complaint, and that with full knowledge of the fact that said officers in said year (1891) had failed and refused to levy said taxes, and then and there intended to continue such failure and refusal, and did so continue to fail to make said levies during each and all of said years subsequent to the year 1891; and that said complainant and its assignors did not at any time during the said year 1891, nor during any of said years subsequent thereto, or at any time, avail themselves of said legal remedy by writ of mandamus, or otherwise, compel said officers of said respondent county to discharge their duties in the premises, and to make said levies; and that, according to the rules and practices of courts of equity, it would now be inequitable and against good conscience to grant the relief prayed for in the bill, requiring said additional levy of taxes for said year 1891 and hitherto, or to grant complainant any relief whatever.

"IX. Respondent further demurs to said bill of complaint, for that it appears in the allegations, matters, and facts stated in said bill that said complainant has had, during all the years from the year 1882 and hitherto, a plain, adequate, and complete remedy at law by writ of mandamus to compel and require the proper officers of said Grand county to levy and collect all lawful taxes and apply the same, when collected, to the payment of the indebtedness of said Grand county, all as is required by the laws and statutes of the state of Colorado.

"X. Respondent demurs specially to those parts and portions of said bill charging and complaining that respondent has, since the year 1890, applied to the payment of said prior outstanding and unpaid warrants only the revenue derived from the special 3-mill levy for the years 1891, 1892, 1893, and 1894, and only the revenue derived from said special 5-mill levy for the year 1895, and subsequent years, for that it does not appear that the respondent, through its proper officers, did not, for each and all of said years, to wit, for the year 1891 and hitherto, in addition to said special levies, collect annually 10 mills or more for each and every dollar of taxable property of said respondent county for ordinary county revenue, as provided and authorized by the statutes of the state of Colorado referred to in said bill of complaint, and it clearly appearing from the allegations, matters, and facts set forth in said bill of complaint that all such revenues levied and collected for ordinary county revenue for each and all of said years might have been applied to the payment of said prior outstanding and unpaid warrants owned by complainant and its assignors, and all others similarly situated, and that the application of such revenue to the payment of said warrants could have been compelled and coerced by a writ of mandamus against the proper officers of said respondent county; and the allegations of said bill wholly fail to show that complainant and its assignors, or any other person similarly situated, during any of said years, or at any time, sought by writ of mandamus, or otherwise, to compel or coerce said officers of said respondent county to apply said revenue to the payment of said warrants.

"XI. The respondent further demurs to said bill, for that it appears from the allegations, matters, and facts stated in said bill of complaint that prior to the year 1891 said respondent county had become indebted in a very large amount, evidenced by its then outstanding and unpaid county orders or warrants, and that in said year 1891 [Laws 1891, p. 112, § 4] the Legislature of the state of Colorado duly enacted a statute requiring the respondent county to levy a special tax of 3 mills on each and every dollar of the taxable property of said county, to be exclusively applied to the payment of said prior outstanding and unpaid warrants, and that thereafter, in the year 1893 [Laws 1893, p. 100], said Legislature of the state of Colorado amended said

prior statute by further enactment that there should be thereafter levied each year 5 mills on each and every dollar of the taxable property of said respondent county, to be exclusively applied to the payment of said prior outstanding and unpaid warrants, and that the respondent has faithfully complied with each and all of said statutes, and has made said levies during each and all of said years, and applied the moneys derived therefrom to the payment of said warrants in the order of their registration, all as alleged in the bill of complaint. It also clearly appears from said bill that said complainant and its assignors, and all others similarly situated, ever since the year 1891, acquiesced in said method and manner of payment of said warrants, as authorized and directed by the Legislature of the state of Colorado by said statutes of 1891 and 1893, and that complainant and its assignors, and all others similarly situated, have, since the year 1891, received and accepted payment of said warrants, in the order of their registration, from the moneys and funds derived from the taxes collected by respondent under and by virtue of said levies of 3 and 5 mills annually, all as alleged in said bill of complaint since the year 1891, and that the complainant and all others similarly situated are estopped from now claiming that the Legislature of the state of Colorado was without power or authority to enact said statutes of 1891 and 1893 providing for the payment of said warrants by said special levies of taxes, as directed by said statutes, and as alleged in the bill of complaint.

"XII. And respondent further demurs to said bill of complaint, for that it clearly appears from the allegations of said bill that, had said complainant and its assignors used due diligence by availing themselves of their legal remedies, said warrants would long since have been paid, and that said complainant and its assignors have, by their laches, long since lost all legal or equitable right to coerce and command the respondent county to make additional levies of taxes on the present assessed valuation of the respondent county, for the purpose of supplying or producing a fund equivalent to the fund which would have been produced upon former valuation for prior years, had proper levies on such former valuations of said prior years been duly made and collected as prayed for in the bill of complaint.

"XIII. Respondent further demurs to said bill of complaint, for that said bill of complaint does not state any matters entitling complainant to the relief prayed for therein; nor are the facts therein stated sufficient to entitle the complainant to any relief in equity against the respondent."

The demurrer was sustained, and, the complainant electing to stand on its bill, the same was dismissed, and it appeals.

In the view taken in this case, it will only be necessary to consider at length one question, and that arises under paragraph (e) of the complainant's prayer:

"That a writ of injunction be issued against the respondent to restrain it from the further diversion of funds until the judgment herein to be rendered shall have been fully paid in accordance with the date of the registration of the warrants upon which such judgment is to be founded."

When these warrants were issued, the laws of Colorado contained the following:

"Colorado General Laws of 1877.

"Act relating to county government.

"Sec. 533 [p. 244]. County orders, properly attested, shall be entitled to a preference as to payment according to the order of time in which they may be presented to the county treasurer; but where two or more orders are presented at the same time, precedence shall be given to the order of the oldest date, but every county treasurer shall receive in payment of county taxes, county orders issued in said county, which may be presented in payment for such county taxes."

"Sec. 540 [p. 246]. Every fund in the hands of the county treasurer for disbursement shall be paid out in the order in which the orders drawn thereon, and payable out of the same, shall be presented for payment."

"Sec. 2245 [p. 742]. There shall be 'levied and assessed upon taxable, real and personal property within this state in each year the following taxes: For ordinary county revenue, including the support of the poor, not more than ten mills on the dollar."

[1] No claim is made that complainant's warrants are themselves barred by the statute of limitations, though the claim is made that much of the relief sought is so barred. As, under the law, the warrants were payable in the order of their registration, subject to the provision as to the receipt of warrants for taxes, and under the allegations there has been no time when the money in the treasury was sufficient to pay them and prior orders, the statute of limitations has not yet commenced to run against them.

[2] In 1885 the Legislature of Colorado made county taxes payable in cash. As it will hereafter appear, the Supreme Court of that state declared this enactment unconstitutional, in so far as it denied the privilege of using warrants issued prior to its enactment for that purpose.

In 1891 the Legislature passed the following law:

"Colorado Session Laws of 1891 (pp. 111, 112).

"An act to require the affairs of the counties of this state to be conducted from the revenues derived from taxation, and to prevent the expenses of any county from exceeding its revenues.

"Section 1. The fiscal year of each county in the state of Colorado shall commence on the first day of January in each year. The board of county commissioners of each county in this state shall, within the last quarter of each fiscal year, and at the same time that the annual levy of taxes is made, pass a resolution to be termed the annual appropriation resolution for the next fiscal year, in which said board shall appropriate such sum, or sums, of money as may be deemed necessary to defray all necessary expenses and liabilities of such county for the next fiscal year, and in such resolution shall specify the objects and purposes for which such appropriations are made, and the amount appropriated for each object or purpose. No further appropriation shall be made at any other time within such fiscal year, nor shall the total amount appropriated exceed the probable amount of revenue that will be collected during the fiscal year."

"Sec. 4. The board of county commissioners of each county in the state of Colorado shall levy and assess upon the taxable real and personal property within their county, in each year, the following taxes: For ordinary county revenue such rate as will be sufficient to defray the ordinary county expenses; for the purpose of paying outstanding warrants and other floating indebtedness, not more than three mills on the dollar.

"Sec. 5. It shall be the duty of the county treasurer to apportion and keep all taxes collected by him in the several funds for which the taxes were levied, as above provided, and it shall not be lawful to use the moneys belonging to any fund, for the purpose of paying warrants drawn, or which properly should have been drawn upon some other fund. * * *

"(Approved April 1, 1891.)"

And in 1893 the Legislature enacted the following:

"Colorado Session Laws of 1893.

"Section 1 [p. 100]. It shall be the duty of the board of county commissioners of any county of this state which has, or shall have, any unliquidated and unpaid county warrants or orders, drawn on any fund, for the payments of which there are no funds in the county treasury of such county, and to

pay which the incoming taxes already levied are insufficient, at the same time other county taxes are annually levied for the current year, in addition to the other taxes provided by law, to levy a sufficient tax, not exceeding five mills on the dollar of assessed property, as shown by the assessment roll of such county of the current year, for the purpose of creating a 'Special Fund' for the liquidation, payment and redemption of all such unliquidated and unpaid warrants or orders. A like levy shall be so made at such time, annually, until all of such unliquidated and unpaid warrants or orders shall be fully liquidated, paid and redeemed, principal and interest, as provided in this act.

"Sec. 2 [p. 101]. After the levy of such special tax all such warrants or orders of such county issued prior to such levy, unliquidated and unpaid, for the payment of which no funds are at hand in the county treasury, and no effective provision made for their payment out of other taxes already levied, shall be paid exclusively from the fund hereby created and appropriated, which shall be known and carried on the books of the county treasurer as 'The Redemption Fund for ...... Fund Warrants,' naming the fund on which the warrants liquidated and redeemed were originally drawn, and such 'Redemption Fund' shall be used exclusively for such liquidation and redemption, and for no other purpose whatever."

The county, under all these laws, has authority to levy up to 10 mills on the dollar for ordinary county revenue. There is therefore no necessity to consider what would be the situation if it did not have the power to levy 10 mills for that purpose. The question at once arises, as when the plaintiff's warrants were issued the county was expressly empowered to levy, not to exceed 10 mills, for ordinary expenses, and it issued these warrants under the law which provided that they should be paid in the order of registration, could the Legislature simply provide that only 3 or 5 mills should be applied on the old warrants, and not 10, as provided by the law under which they were issued?

In Stryker v. Board of Commissioners of Grand County, 77 Fed. 567, 578, 23 C. C. A. 286, 296, it was said:

"It may be conceded that because the petitioner's warrants, now merged in a judgment, were issued and registered prior to the repeal of said section, such repeal could not operate to deprive him of the remedy for their collection which was provided thereby, unless the repealing act provided an equally efficacious remedy."

The Supreme Court of Colorado, in People v. Hall, 8 Colo. 485, 9 Pac. 34, expressly held that, where the general law of the state in force at the time of the issuance of a warrant provided it should be receivable for taxes, a subsequent repeal of such law was in conflict with section 10 of article 1 of the federal Constitution:

"No state * * * shall pass any * * * law impairing the obligation of contracts"—

and a similar provision of the state Constitution of Colorado. This was followed in People v. Austin, 11 Colo. 134, 17 Pac. 485.

It will be borne in mind that section 533 of the Colorado General Laws of 1877 provided that:

"County orders, properly attested, shall be entitled to a preference as to payment according to the order of time in which they may be presented to the county treasurer * * * but every county treasurer shall receive in payment of county taxes, county orders issued in said county, which may be presented in payment for such county taxes."

[3] The word "but" is defined in volume 1, Words and Phrases, page 926, as "except"; "on the contrary"; "yet" or "still," as a word of limitation.

How absurd it would be to assume the statute in general was not a part of the warrants issued while it was in force, but a mere exception, or words of limitation became incorporated in every such warrant.

While the statutes under consideration are Colorado laws, they did not originate there. As early as March 27, 1850 (St. 1850, c. 42), the California Legislature passed a law providing for the payment of warrants in the order of registration. In Iowa the provision that county warrants should be received for county taxes appears in section 489 of the Code of 1851; and the provision for stamping warrants, not paid for want of funds, appears in section 153 of the Code of 1851. In that state the provision for payment by counties in the order of registration was not enacted until April 7, 1886, in chapter 84 of the Acts of the Twenty-First General Assembly; and this provision was extended to cities by section 2 of chapter 3 of the Acts of the Twenty-Second General Assembly, passed in 1888. The same General Assembly passed a law providing for an annual appropriation ordinance, intended to put cities on a cash basis. At that time the city of Council Bluffs had outstanding many thousands of dollars of city warrants, the overlap of former years; and to pay the expenses of the city from the taxes of that year would of necessity indefinitely defer the payment of this outstanding indebtedness. Council Bluffs was organized as a city of the first class in March, 1882, and at the solicitation of the city there was added to this statute a provision that it should not apply to cities of the first class organized since 1881. In 1897, in a general revision of the statutes of the state, this exception of Council Bluffs was omitted from this statute. Subdivision 16, § 668, Code of 1897. The city clerk brought suit to compel the payment of his warrant when there were outstanding some $140,000 of warrants issued since 1888, but prior to the adoption of the Revision. The Supreme Court said, in Phillips v. Reed, 109 Iowa, 188, 80 N. W. 347, that:

"The effect of the requirement that warrants shall be paid in the order of their presentation is to create a contract for precedence with the warrant holders, which could not be impaired by subsequent legislation."

It cites as sustaining this People v. May (Hall) 8 Colo. 485, 9 Pac. 34; People v. Austin, 11 Colo. 134, 17 Pac. 485; Taylor v. Brooks, 5 Cal. 332; Western Savings Fund Society v. Philadelphia, 31 Pa. 175, 72 Am. Dec. 730.

In Washington the city ordinance of Tacoma provided for payment of warrants in the order of their number and date, and subsequently it was sought, without reducing taxation, to divert the proceeds thereof to other funds than the general fund on which a warrant was drawn, and it was held to impair the obligation of the contract with the warrant holder. Eidemiller v. City of Tacoma, 14 Wash. 376, 44 Pac. 877. See, also, authorities cited in

36 Am. Dig., Municipal Corporations, 1890; 14 Decennial Dig., Municipal Corporations, 904 (2); 28 Cyc. 1572.

"It is within the power of the Legislature to prescribe the order of payment of warrants, e. g., that they be paid in the order of issuance or the order of presentation and registration; and a statutory provision which is in force at the time when warrants are issued, that they shall be paid in a prescribed manner—e. g., the order of presentation and registration—creates a contract for precedence with the warrant holder which cannot be impaired by subsequent legislation." Dillon on Municipal Corporations (5th Ed.) § 859.

It is settled by authority that where the law, at the time of the issuance of a warrant, provides for its payment in the order of its presentation this becomes a part of the contract, and cannot be altered or changed, at least without an equally safe, certain, and speedy provision for payment. Such a proposition would not seem to require authorities to sustain it. Usually warrants purport to be for immediate payment, but where the county or city is in an embarrassed condition such payment cannot be made; and when the Legislature provides they shall be paid in the order of the presentation and registration this is equivalent to inserting in each warrant, "Payable at any time when the cash in the fund is sufficient to pay this and all previously presented and registered warrants," and in law fixes the date of payment. When, therefore, the Legislature sees fit, definitely or indefinitely, to change the date of maturity, it impairs the obligation of the contract, and that it cannot do consistently with the provision of the Constitution of the United States. If ever since 1891, a period of more than 20 years, the respondent has refused to apply 10 mills annually to the payment of the warrants, but has paid 3 or 5 mills, it is clearly the right of the complainant to have it enjoined from such conduct in the future; and such injunction would be equitable relief to which it would be entitled in this action.

Much of the rest of the relief sought cannot be granted. The law provided for the receipt of warrants in payment of taxes at the time these warrants were issued, and did not provide that, when thus used, they must be used in the order of their registration. The Supreme Court of Colorado has declared that it is unconstitutional to deprive outstanding warrants of this privilege existing at the time of their issuance. No relief can therefore be granted to the complainant on account of such receipt.

There is no allegation in the bill that 10 mills have not been annually levied, collected, and disbursed for ordinary county expenses. There is therefore nothing to sustain the plea for an accounting upon that subject; nor are there any allegations in the bill to warrant an injunction in the nature of a writ of mandamus as prayed. Stryker v. Board of Commissioners, 77 Fed. 567, 23 C. C. A. 286.

For the reasons indicated, the decree is reversed, and the case is remanded, with directions for further proceedings in accordance with the views expressed in this opinion.