## SIDNEY SPITZER & CO. et al. v. MONROE COUNTY et al.

(District Court, S. D. Alabama. July 29, 1921.)

1. **Counties** $\Longleftrightarrow$ **190(2)—Counties in Alabama may not make special levy in excess of 2½ mills.**

Under Const. Ala. § 215, providing that no county shall levy a tax in any one year in excess of one-half of 1 per cent. of the taxable property therein, provided that to pay any debt contracted for the erection of public buildings, bridges, or roads it may levy and collect "such special taxes, not to exceed one-fourth of 1 per cent., as may have been or may be authorized by law," and Code Ala. 1907, § 134, which limits the authority of a county board to levy special taxes to a tax not exceeding

one-fourth of 1 per cent., a county board is without power to levy a special tax to pay for road work in excess of one-fourth of 1 per cent., though the excess is to be taken out of the general tax of one-half of 1 per cent.

**2. Counties ⊂⊃190 (1)—County board not authorized to anticipate surplus in general fund by levying special tax.**

Code Ala. 1907, § 5766, authorizing the court of county commissioners or boards of revenue of any county to transfer to the road fund any surplus of the general fund, does not give them power to anticipate a surplus and apply it in advance to a road debt by levying it as a special tax.

**3. Counties ⊂⊃190 (1)—County boards not authorized to split general levy.**

Code Ala. 1907, § 1335, requiring payment to the cities within a county of one-half of so much of a special tax as was collected on property located in such cities, confers no authority on a county board in levying taxes to split the general levy of 5 mills and levy a part as a special tax.

**4. Counties ⊂⊃190 (2)—Taxing powers of counties are conferred and limited by statute.**

A county has no power of taxation except such as is conferred by statute, to be exercised subject to the conditions and limitations prescribed.

**5. Estoppel ⊂⊃62 (3)—County held not estopped by acts of officers.**

A county held not estopped to assert the invalidity of a contract made by the county board, which it had no power to make, by the act of its officers in pleading such contract as a defense to an action against it.

**6. Counties ⊂⊃111 (1)—Contract to levy special tax binding.**

A county held bound by a contract made by its board of revenue, based on a valuable consideration, to levy a special tax for the payment of county warrants held by complainants, which levy the board had authority to make, and also held bound to apply the proceeds of a similar levy which had been made and collected to the payment of such warrants.

In Equity. Suit by Sidney Spitzer & Co. and others against Monroe County and others. On motion to dismiss bill. Denied.

G. W. L. Smith, of Brewton, Ala., for plaintiffs.

F. W. Hare, C. L. Hybart, and Barnett, Bugg & Lee, all of Monroeville, Ala., for defendants.

ERVIN, District Judge. The bill in this case was filed by three parties who are nonresidents of Alabama, against Monroe county, Ala., the board of revenue of said county, and the tax collector and treasurer, and various other county officials. It sets up that plaintiffs had become the owners of some $191,000 of interest-bearing warrants which had been issued by Monroe county in payment for construction of roads through the county, and that some portion of these warrants are past due and the balance will fall due at regular future installments.

That on February 25, 1920, an agreement was entered into between plaintiffs and the board of revenue of Monroe county which was amended July 13, 1920, whereby for a valuable consideration the said board agreed to levy the special tax of 2½ mills for the purpose of paying plaintiff's warrants, and that said board at the same time also agreed to levy a special tax of 1½ mills on the dollar out of the 5-mill general tax for the years 1920 and 1921, to pay the principal and interest on the said warrants.

That the said board duly levied the taxes as agreed, for the year 1920, but that in the early part of 1921 said board undertook to change both of the levies so as to deprive plaintiffs of the benefit of both, said 2½ and said 1½ mill taxes, whereby the obligation of the contract between plaintiffs and defendant was impaired.

It is sought to compel the said board of revenue to revoke the levies they had made for the year 1921 and to make said levies for the year 1921 as they had agreed to do.

It is further sought to compel the treasurer and the tax collector to segregate the amount collected under this levy and to pay the same over to plaintiffs and to forbid them from paying the proceeds of these levies to any one other than the plaintiffs.

The defendants move to dismiss the bill for want of equity on the ground that so far as the county board undertook to make the levy of 1½ mills out of the 5-mill tax, that said agreement was void for want of power in said board to make such agreement, and further because the bill sought to deprive the board of its discretionary powers in making such levies and appropriations. The matter was argued before me at length and briefs filed by all parties and taken under submission.

[1] Local Acts 1915, p. 394, creates the board of revenue for Monroe county, Ala., and gives it all the authority, jurisdiction, and powers which are now held or may hereafter be conferred on county commissions or like bodies in the state. Section 13 reads as follows:

"That said board of revenue is hereby given legislative, judicial, and executive powers in the matter of building, maintaining, changing, establishing and abolishing public roads, bridges and ferries. It may establish, promulgate, and enforce new rules, regulations, and laws not inconsistent with the general and special laws of this state, which are necessary to make, improve, and maintain a good system of public roads, bridges and ferries in said county."

Not one word is said as to taxation. The board is expressly limited in the new rules, regulations, and laws that it may pass to such as are not inconsistent with the general or special laws of this state.

What powers as to taxation then are held by the boards of revenue or county commissioners in the state?

Section 215 of the Constitution says:

"No county in this state shall be authorized to levy a greater rate of taxation in any one year on the value of the taxable property therein than one half of one per centum; provided, that to pay debts existing on the sixth day of December, eighteen hundred and seventy-five, an additional rate of one-fourth of one per centum may be levied and collected which shall be appropriated exclusively to the payment of such debts and the interest thereon; provided, further, that to pay any debt or liability now existing against any county, incurred for the erection, construction, or maintenance of the necessary public buildings or bridges, or that may hereafter be created for the erection of necessary public buildings, bridges, or roads, (a) any county may levy and collect such special taxes, not to exceed one-fourth of one per centum, as may have been or may hereafter be authorized by law, which taxes so levied and collected shall be applied exclusively to the purposes for which the same were so levied and collected."

The "such special taxes" undoubtedly refers to the one-fourth of 1 per centum authorized as a special tax.

It is exceedingly doubtful from the way this provision reads if a county may now even under legislative authority levy any special taxes at a higher rate than one-fourth of 1 per centum for the express purpose of paying its road debts.

The Constitution authorizing the levy by the county of a special tax reads:

"Any county may levy and collect such *special taxes*, not to exceed one-fourth of one per centum, as *may have been or may hereafter be authorized by law*." (Italics mine.)

The only authorization by law I find for the board to levy a special tax is in section 134 of the Code, which limits the authority of the board to levy a special tax not to exceed one-fourth of 1 per centum. The Constitution in giving the Legislature the power to authorize the levy by the county of special taxes limits that power to the rate of one-fourth of 1 per centum, and the same Constitution limits the right of the county to levy such special taxes only as "may have been or may hereafter be authorized by law." It therefore follows, it seems to me, that the board had no power to levy any special tax beyond the rate of one-fourth of 1 per centum: First, because the power of the Legislature to authorize the levy was limited by the Constitution to that rate; second, because there is no statutory authority anywhere shown giving the board the right to exceed that rate. The contracts by which the board bound itself to levy 1½ mills out of the general tax of one-half of 1 per centum was therefore unauthorized and void, and the county is not bound by this contract made by the board as its agent.

[2] In view of the contention that certain provisions of the Code and certain acts of the Legislature have conferred upon the county board the power to make this levy, I will proceed now to discuss these provisions and their effect, leaving out of view the constitutional limitation just referred to.

Code of 1907, § 134, provides that a special tax of not exceeding one-fourth of 1 per centum shall be levied for the purpose of paying any debt for building roads, etc. Section 3313 of the Code says:

"The court has authority—* * * (2) To levy a general tax, for general, and a special tax, for special county purposes, according to the provisions of this code."

Section 5766 says:

"The court of county commissioners or boards of revenue of any county of the state may transfer to the road fund of the county any surplus of general funds of the county in the county treasury or any part of such surplus whenever in the judgment of said court or board it will promote the interest of the county to make such transfer."

Sections 5765 and 5767 confer general superintendence of and jurisdiction over the building and maintenance of the public roads, bridges, etc., in their respective counties, and section 5767 concludes:

"To such courts or boards the powers of the state pertaining to the construction, maintenance, and improvement of the public roads, bridges, and ferries are delegated when not otherwise provided by law."

These are the general provisions in the Code, and they are not added to by the special act creating the board of revenue for Monroe county found in the Local Acts of 1915, p. 394, where section 13 of the act, after conferring on the board powers practically the same as in sections 5765 and 5767, concludes as follows:

"It may establish, promulgate, and enforce new rules, regulations, and laws *not inconsistent with the general and special laws* of this state, which are necessary to make, improve, and maintain a good system of public roads, bridges and ferries in said county." (Italics mine.)

We see by this limitation so put on the general powers conferred, that the Legislature did not intend to invest this board with any greater powers than that possessed by other like boards, nor did it intend to give it power to do any acts beyond those recognized by the existing laws. Both the Constitution and statutes provide for a general and a special tax to be levied by county boards.

The statute, Code, § 5766, provides for the contingency of an excess in the levy for general current expenses so that such excess may be tranferred to the road fund and so be applied to the unpaid county debts for roads, bridges, etc.

There is no statutory authority I have seen authorizing this county to split the general tax of five mills into special levies, and in the absence of such special authority the board had no power to do it.

Again. the Legislature, having provided this way of applying a portion of the five-mill tax to the payment of the county's debts, have thereby forbidden any other way of accomplishing this purpose by the county board; the only discretion given is as to what portion of the excess should be transferred.

It will not do for the board to say, as we were authorized to transfer the excess and so pay the county's debts, we will do the same thing by levying a portion of this tax as a special tax.

The Legislature having provided not only that a portion of the general tax might be so applied, but how it could be done, the board was bound by the method provided, and had no discretion as to the method to be followed.

Again, the Legislature provided that the excess or unused portion of the general tax levied might be used by transferring it to the bridge and road fund; this did not confer on the board the power to estimate in advance that there would be a surplus and how much such surplus would be and apply it in advance to the road debt by levying such estimated excess as a special tax.

The power conferred was to use some portion or all of the unexpended tax money in a special way, and not to anticipate the current expenses of the county and appropriate the estimated excess.

The broad general powers conferred on the county boards by the Code and the special acts do not mention taxation, nor do they include it; they must be read in connection with the provisions found in the Constitution and the Code regulating the levy and the rate of taxation, and when so read and construed there is no conflict.

They must also be read in the light of the decisions declaring the powers of such boards as to taxation.

[3] It is true that the Legislature has undertaken to give authority to certain counties to split the five-mill tax in making the levy, and it is held in Commissioners of Calhoun County v. Anniston, 176 Ala. 605, 58 South. 252, that—

"There is nothing offensive to the Constitution in the act authorizing the levy of the tax, since the same is within the constitutional limit of one-half of one per cent., authorized to the county."

Such acts seems to have been recognized by the Alabama Supreme Court in a number of cases, but the very fact that the Legislature has passed them shows that the boards in the absence of such legislative authority had no power to do so.

The expressions used in the decisions passing on these special acts must be construed in the light of the questions they were considering, and not as holding that the boards had such power in the absence of the special acts. "The generality of the language used in an opinion is always to be restricted to the case before the court, and it is only authority to that extent." Southern Railroad Co. v. St. Clair County, 124 Ala. 504, 27 South. 29.

An expression used by the court in Board of Revenue of Jefferson County v. Birmingham, 172 Ala. 153, 54 South. 762, "Whether or not so much of the act, or so much of section 1335, as requires the payment to the municipality of one-half of the tax levied for a specific purpose, under subdivision 'a' of section 215 of the Constitution, is valid, we need not decide, as that question is not involved," is significant. The court was then passing on the effect of a special act and of section 1335 of the Code of Alabama requiring the payment to the cities located in the counties of one-half of so much of the special tax as was collected on the property located in such cities. It is here contended that these provisions give this board the right to split this one-half of 1 per cent. tax.

I cannot, however, agree to this because these acts were not written to confer additional power on the county boards as to the levy of taxes, but solely to give the cities a portion of such special taxes as might legally be levied and collected by the counties.

In its practical results there is no difference between a special tax and the special application of the whole or a part of the general tax for a particular purpose. Neither can be done in the absence of a law sanctioning it.

[4] Whatever power the county possesses or duties it is required to perform originates in the statute regulating it or declaring the duty. Southern Railroad Co. v. St. Clair County, 124 Ala. 495, 27 South. 23.

"The municipal corporations of a state having no inherent power to tax must take such power as is conferred upon them under the conditions and limitations that may be prescribed, and only for such purposes as may be expressed. This is fundamental. The authority is not only a delegated authority conferred by the state, but it is to be assumed that the state has given all it intended should be exercised, and the grant, like that of all special and limited grants, is to be strictly construed. Express power to levy a particular tax is a negation of the power to lay others." Cooley on Taxation (3d Ed.) 554; Phœnix Carpet Co. v. State, 118 Ala. 143, 22 South. 627, 72 Am. St. Rep. 143.

It is urged upon me by the defendant that when a county has authority to levy a given rate of tax for general county purposes, no holder of county warrants can demand that they shall carve a special tax out of this general fund for the benefit of the holders of such warrants unless the statute requires it. Grand County v. King, 67 Fed. 202, 14 C. C. A. 421; Harper v. Daniels, 211 Fed. 57, 129 C. C. A. 242; Rollins v. Grand County, 199 Fed. 71, 117 C. C. A. 583.

It will be noticed that this ruling is based upon the fact that the courts have no power to require the county boards to exercise the discretion which is given them by law as to how they shall do what the law authorized them to do.

Under the facts alleged in this bill, if the county board of Monroe county made a contract as alleged, upon valuable consideration, then they have lost the discretion with which they were vested by the statute, and if they had the power to make this contract, the court could compel them to carry out its terms. But as I find that the board did not have this power, it necessarily follows that their contract by which they agreed to make this levy of 1½ mills out of the 5-mill general tax, for the benefit of the plaintiff, was not binding on them, because of the want of power on the part of the board to make the levy or to contract to do so.

[5] In the bill filed in this cause it is set up that the county board is estopped to deny its agreement to levy a 1½-mill tax out of the 5-mill general tax for the benefit of the plaintiff, because in a bill filed by a taxpayer against the defendant it was set up as a part of its defense that it had arranged for a levy of a special tax which would include this 1½-mill in settlement of its debts to plaintiff, and that on the hearing it got the benefit of this representation in its answer.

The question then arises whether the ordinary rule of estoppel, which applies to individuals and forbids them from denying a state of facts which they have set up and gotten the benefit of in legal proceedings, applies to municipal corporations. In City of Demopolis v. Marengo County, 195 Ala. 214, 70 South. 275, the Supreme Court of Alabama passing upon the defense of voluntary payment held that this defense does not apply to an unauthorized payment by the county board, and quoted from the Village of Ft. Edward v. Fish, 156 N. Y. 363, 50 N. E. 973, as follows:

"That the doctrine of voluntary payment applies to individuals who have power to do as they wish with their own, but it does not apply to an agent of a municipal corporation who pays out its money without power, to one who accepts it with knowledge. * * * Such a payment is not voluntarily made by the corporation, but by its agent in excess of his authority and in defiance of its rights."

In the Demopolis Case the court before referring to this question had already said:

"A county is, in one sense, a corporation, and in that sense it has its officers or agents, who, when acting within the authority conferred upon them by law, may legally bind the county. In another sense a county is a political subdivision of the state, created for the purpose of aiding the state in the administration of the government of the state. In this latter sense a county is an arm of the state; its officers are public officials, and are officers holding

office under the laws of the state within the meaning of our Constitution; and their compensation is fixed by law. When, within the scope of their powers as fixed by statute, the county commissioners of a county are dealing simply with the business affairs of the county, such commissioners are, in fact, the agents of the county, considered as a corporation, and they may bind the county just as the agents of any other corporation may bind the corporation of which they are the agents, so long as they act within the actual scope of their authority. When, however, the members of the court of county commissioners of a county act in the other and broader field—when they leave the realm of business and are acting in their capacity as 'officers holding the office under the laws of this state'—their acts can confer no more rights upon persons claiming through such acts than do the acts of any other public official, or set of public officials, of the county or state. It may be well to bear this distinction in mind, for the act of a public official, no matter what his apparent authority may be, which he is not authorized to perform, is void, not merely voidable, and confers no rights of any sort upon any one. 'All who deal with officers or agents of the government must inquire at their peril into the extent of their powers.'"

It seems to me the same reason which excepts municipal corporations from the rule as to voluntary payments must necessarily apply to the doctrine of estoppel because if the reason applies the rule should also apply.

Finding therefore that the acts of the county board so far as it undertook to agree to levy a 1½-mill tax out of the general 5-mill tax it was authorized to levy for county purposes, as a special tax to pay the plaintiff's debt, was void for the lack of authority of the board to make such levy or agreement, I think for the same reason the fact that the county may have gained a benefit by setting up this fact in its answer does not estop them in this suit.

[6] Under the views I hold as to the agreement of the county board to carve 1½ mills from the general 5-mill tax, I would sustain the motion of the defendant to dismiss but for the fact that the bill shows that the county board agreed not only to carve out this special tax of 1½ mills, but that it would levy the special tax which it was authorized to levy of one-fourth of 1 per centum or 2½ mills to be used in the payment of plaintiff's debt, and that it had failed to carry out this agreement, and had undertaken to use the levy of this special tax so as to deprive the plaintiffs of the proceeds of this levy.

Under the case of Board of Revenue v. Farson, 197 Ala. 375, 72 South. 613, L. R. A. 1918B, 881, the agreement of the county to levy this tax for the benefit of the plaintiff being upon a valuable consideration, plaintiff acquired rights in this levy that the county board had no right to try and deprive him of by any subsequent change of the levy so as to appropriate the money to other purposes.

The bill also charges that the county officials are seeking to deprive plaintiffs of the money raised on the special levy of 4 mills which was made for the plaintiffs for the year 1920. This levy having been made and the money collected under it thereby such money is appropriated to the purposes of the levy and plaintiffs are entitled to have it paid over to them in satisfaction pro tanto of their warrants. Farson v. Bird, 197 Ala. 384, 72 South. 550.

Under these two charges the bill has equity, and therefore the motion to dismiss the bill will be denied.