STATE EX REL. BOARD OF COUNTY COMMISSIONERS, RELATORS, *v.* DISTRICT COURT ET AL., RESPONDENTS.

(No. 4,998.)

(Submitted January 11, 1922.   Decided February 6, 1922.)

[204 Pac. 600.]

*Supervisory Control—Contempt—Counties—Statutes—Mothers' Pension Act—Construction—Warrants—Registration.*

Counties—Poor Fund—Mothers' Pension Act—Construction.
   1.  Under Chapter 257, Laws of 1921 (secs. 10480–10487, Revised Codes 1921), amendatory of Laws of 1917, Chapter 83, and of Laws of 1919, Chapter 198, one-half of the county poor fund is automatically set aside for the payment of mothers' pensions, if such amount is needed for that purpose, the remaining half only being thus available for the payment of warrants for other charges against the poor fund.

Statutes and Statutory Construction—Legislative Policy—Power of Courts.
   2.  Courts cannot inquire into or control matters of legislative policy; hence they may not, in the construction of a statute, pass upon the questions whether legislation, such as the Mothers' Pension Law, is wise or unwise or whether in its practical application it fails to meet the needs of any particular county.

---

1.  On  constitutionality  of  Mothers'  Pension  Acts,  see  note  in  2 A. L. R. 1233.

Statutes Susceptible of Two Constructions—Duty of Courts.
    3. Of two admissible constructions of a statute, courts are never justified in adopting the one which defeats its manifest purpose.

Counties—Transfer of Funds—Limit of Authority.
    4. Under section 2921, Revised Codes of 1907, the board of county commissioners may transfer only the surplus in any county fund (except the school fund) to other funds.

Counties—Poor Fund—Mothers' Pensions—Registration of Warrants.
    5. Warrants issued against the poor fund and registered prior to July 1, 1921, the day the amended Mothers' Pension Act became effective and under which one-half of that fund was automatically set aside for mothers' pensions, were a direct charge against the entire fund, and persons receiving or registering poor fund warrants after that date were chargeable with knowledge that they became a charge against half of that fund only.

Supervisory Control—Mothers' Pensions—Refusal to Issue Warrant—Contempt.
    6. On supervisory control to review an order adjudging county commissioners guilty of contempt for refusing to issue a warrant on the poor fund in payment of a mother's pension, *held* that contemnors were not justified in their refusal based upon an erroneous construction of the Mothers' Pension Act, where after setting apart a sum sufficient to redeem outstanding warrants registered prior to July 1, the day on which the Act became effective, there remained an ample amount which could be devoted to the payment of the claim under the Act as construed in paragraph 1 above.

Original application by the State of Montana, on the relation of the Board of County Commissioners of Silver Bow County, and others, for writ of supervisory control against the District Court of the Second Judicial District in and for Silver Bow County and Jeremiah J. Lynch, a Judge thereof, to annul a judgment finding relators guilty of contempt. Motion to quash sustained, and proceeding dismissed.

*Mr. Geo. Bourquin, Mr. Ed. Fitzpatrick* and *Mr. H. A. Tyvand,* for Relators; *Mr. Fitzpatrick* argued the cause orally.

*Mr. W. D. Kyle, Amicus Curiae,* submitted a brief.

*Messrs. McCaffery & Sullivan,* for Respondents, submitted a brief; *Mr. J. F. Sullivan* argued the cause orally.

MR. JUSTICE HOLLOWAY delivered the opinion of the court.

The fourteenth legislative assembly of this state enacted a statute entitled "An Act to provide for financial aid in the

care of dependent children in their own homes," *etc.* (Chap. 86, Laws of 1915.) That Act was repealed and a similar statute substituted for it by Chapter 83, Laws of 1917, and the enactment is known popularly as the Mothers' Pension Act. Section 3 of Chapter 83 was amended by Chapter 198, Laws of 1919, and the amended section and sections 4 and 7 were amended and section 7A added by Chapter 257, Laws of 1921. The existing statutes upon the subject are now comprised in sections 10480–10487, Revised Codes of 1921. The declared purpose of the legislation is to enable the mother of children coming within the purview of the statute to maintain them in their own home rather than suffer them to be sent to some public institution for care and support, and the purpose is to be effected by contributions to the mother from a public fund of the county. Prior to the amendment made by Chapter 257, above, these contributions or pensions were paid from the general fund, and the total amount that might be expended during any fiscal year was limited only by the schedule contained in the statute and the number of applications allowed. Chapter 257, above, became effective July 1, 1921, and so far amended the prior Acts as to work a substantial change in the law. The amended section 4 provides that warrants for these pensions shall be drawn upon the poor fund of the county, "provided that the aggregate amount of such warrants shall not exceed fifty per cent of such fund."

On October 14, 1921, the· respondent court, by its order, directed the board of county commissioners of Silver Bow county to cause to be issued monthly to Elizabeth Willoughby a warrant for $30, drawn upon the poor fund. The order recited that the court had found that Mrs. Willoughby was and is entitled to receive financial aid under the provisions of the Mothers' Pension Act, and it is conceded now that the proceedings leading up to and including the order were regular in all respects. Due service of the order was made upon the board, but nothing further was done, apparently, until December 21, when Mrs. Willoughby made demand upon the

board for a warrant for $30 under the terms of the court's order. The board declined to issue the warrant, and, upon a proper affidavit presented to the court, the members of the board were cited for contempt, and after a hearing were adjudged guilty. To escape the consequences, they instituted this proceeding to have the judgment annulled.

The controversy involves merely the construction of the Mothers' Pension Act. The judgment in the contempt proceedings was rendered upon an agreed statement of facts. Some of the facts stated are not material, in our judgment, while other facts which should have been made to appear are omitted. This state of the record circumscribes our inquiry within somewhat narrower limits than those covered in the briefs of counsel.

On July 1, 1921, there was a balance to the credit of the poor fund of Silver Bow county, and this balance, with the receipts properly credited to the fund up to December 21, amounted to something over $64,000. On July 1 there were outstanding warrants registered against the poor fund to the amount of $41,651.50. From July 1 to December 21 some of these registered warrants to the amount of $1,358.48 were paid and ordinary expenses amounting to $3,000 in round numbers were also paid from the poor fund, so that on December 21, when Mrs. Willoughby made demand for her warrant, there was in the poor fund an amount exceeding $59,000. In the meantime, however, other warrants drawn upon the poor fund had been registered and on December 21 the total of registered poor fund warrants was $109,000, of which amount $40,293 worth were registered prior to July 1, but none of these warrants were issued for claims under the Mothers' Pension Act.

The ordinary income of the poor fund is limited to such an amount as will be produced by a general property tax which cannot exceed two mills on the dollar valuation. (Sec. 2894, Rev. Codes 1907, as amended by Chap. 84, Laws of 1919, and Chap. 261, Laws of 1921.) At the time the tax levy was

made for 1921, it was assumed that the entire poll tax likewise would be available for the poor fund, but since then the majority of this court held the poll tax statutes invalid. (*State ex rel. Pierce* v. *Cowdy, ante,* p. 119, 203 Pac. 1115.)

The purpose of the last legislative assembly in amending [1–3] section 4 of Chapter 83, above, is perfectly apparent. Theretofore claims for mothers' pensions were paid from the general fund, a fund that has or may have a very large income. By the amendment these claims are payable from the poor fund only, and the total in any fiscal year is limited to one-half of that fund. There could have been but one purpose in making the amendment, namely, to limit within narrow bounds the amount that a county can pay out for mothers' pensions. Whether the statute is wise or not, it was clearly within the power of the legislature to enact it, and this court cannot inquire into or control matters of legislative policy. (*Wheeler & Motter Mer. Co.* v. *Moon,* 49 Mont. 307, 141 Pac. 665.) If the legislation is capable of enforcement, it must be upheld, and it is not an argument against its validity that in its practical application it fails to meet the needs of Silver Bow county.

The meaning of the Act is not difficult to comprehend. One-half of the poor fund, if that much is necessary, is set apart automatically for the payment of mothers' pensions, and the remainder only can be devoted to other poor fund charges. This must be so, for otherwise the statute would be practically a dead letter, and of two or more admissible constructions the courts are never justified in adopting the one which defeats the manifest purpose of the law. (*Wilkinson* v. *La Combe,* 59 Mont. 518, 197 Pac. 836.) Heretofore we referred to the ordinary resources of the poor fund. Under certain circumstances [4–6] moneys may be transferred from any other county fund (except the school fund) to the poor fund, but the all too-prevalent notion that such transfers may be made indiscriminately is erroneous. It is only the surplus in the other funds

that may be transferred (sec. 2921, Rev. Codes), and in this
instance the record fails to disclose that there was a surplus
in any other available fund, and therefore no question arises
upon the failure of the board to make a transfer. Neither
does the record disclose the rate of taxation levied for the poor
fund for 1921. So far as we are advised, the total of all
outstanding orders for mothers' pensions on December 21 was
$6,815, including the order of October 14. While it is true
that this amount would be paid out in one month, the fact
that the board could not continue to order warrants issued
after the available funds were exhausted affords no ground
for refusing to utilize the funds on hand for this purpose al-
together. Apparently the board proceeded upon the theory
that the $109,000 of registered poor fund warrants constituted
a charge upon the entire poor fund, and that such warrants
were required to be paid in the order of their registration.
Upon this theory it was apparent to the board on December
21 that there was not then any money available to 'pay war-
rants drawn for mothers' pensions and would not be any funds
available for that purpose during the present fiscal year. In
the position assumed, the board was right in part and wrong
in part. The warrants registered prior to July 1 were a direct
charge upon the entire poor fund. They had been issued and
registered under the statutes then in force and it would not
have been competent for the legislature to give preference to
other claims over them. (*People* v. *Austin*, 11 Colo. 134, 17
Pac. 485; *Rollins* v. *Board*, 199 Fed. 71, 117 C. C. A. 583;
Dillon on Municipal Corporations (5th ed.), sec. 859; 15 C. J.
606.) There is not anything in the legislation, however, to
indicate an attempt to impair the obligation of those con-
tracts. So far as the poor fund warrants registered after
July 1 are concerned, it is sufficient to say that every person
who received or registered one of those warrants was charge-
able with knowledge that one-half of the poor fund, or so
much thereof as was necessary, was devoted to the payment
of mothers' pensions, and those warrants became a charge

against the remainder in that fund only. To this extent the Mothers' Pension Act amended section 2949, Revised Codes of 1907.

On December 21 there was available in the poor fund, after setting apart a sum sufficient to redeem the outstanding warrants registered prior to July 1 something like $18,000 or $19,000, one-half of which could and should have been devoted to the payment of mothers' pensions, and until that available fund was exhausted the board could not justify its refusal to obey the order of October 14.

The motion to quash is sustained and this proceeding is dismissed.

*Dismissed.*

ASSOCIATE JUSTICES COOPER and GALEN concur.